**FLORIDA WOMEN'S MEDICAL CLINIC, INC., Wachtel, M.D., Garry H., Benjamin, M.D., Michael J., Individually and as representatives for all those similarly situated**

**v.**

**SMITH, Jim, as Attorney General for the State of Florida, Pingree, David, as Secretary of the Department of Health and Rehabilitative Services of the State of Florida, and Satz, Michael J., as State Attorney for the Seventeenth Judicial Circuit in and for Broward County, Florida.**

No. 79–6063–CIV–JAG.

United States District Court,
S. D. Florida.

Aug. 31, 1979.

Joseph P. Farina, Farina, Wiener & Schmitz, Miami Shores, Fla., for plaintiffs.

Jim Smith, Atty. Gen., Dept. of Legal Affairs by Brian E. Norton, Asst. Atty. Gen., Tallahassee, Fla., for defendants.

## MEMORANDUM OPINION

GONZALEZ, District Judge.

The Florida Women's Medical Clinic is an out-patient facility located in Fort Lauderdale, Florida which performs only first trimester pregnancy terminations. Garry H. Wachtel, M.D. is a physician licensed to practice medicine in the state of Florida who regularly performs first trimester pregnancy terminations at the Florida Women's Medical Clinic. Michael J. Benjamin, M.D. is also a physician licensed to practice medicine in the State of Florida. Dr. Benjamin, however, regularly performs first trimester pregnancy terminations in his private office.

Dr. Wachtel, Dr. Benjamin and the Florida Women's Medical Clinic have filed this lawsuit on behalf of themselves; on behalf of those similarly situated; and on behalf of all women of childbearing age who are or may become pregnant and who desire to terminate their pregnancies.

The plaintiffs seek declaratory relief permanently enjoining the enforcement of the Florida Abortion Clinic Law, Chapter 78–382, Laws of Florida, F.S. 390.011–390.021 (1978 Supp.), and the rules promulgated thereunder by the Department of Health and Rehabilitative Services, Florida Administration Code, Chapter 10D–72.

This Court on March 16, 1979, after oral argument by counsel for the respective parties, entered a preliminary injunction enjoining the enforcement of the above statute and rules. At that time, the Court sua sponte directed the filing of cross motions for summary judgment to effect an expeditious disposition of this matter. These motions are presently before the Court. Also awaiting determination is plaintiffs' Motion for class certification.

■ It is clear that the plaintiff physicians have standing to seek relief as each has a liberty and property interest at stake. *Singleton v. Wulff*, 428 U.S. 106, 112–118, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1970). Standing in this type of case has also been extended to clinics which perform pregnancy terminations, as well as to the clinics' officers. See *Friendship Medical Center, Ltd. v. Chicago Board of Health*, 505 F.2d 1141, 1145–48 (7th Cir. 1974) *cert. denied*, 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975). Finally, physicians have been allowed to argue jus tertii the rights of pregnant women. *Singleton v. Wulff, supra*, 428 U.S. at 118, 96 S.Ct. 2868.

■ This action seeking a declaration as to the constitutionality *vel non* of the aforementioned statutes and rules is so clearly appropriate for Rule 23(b)(2), Fed.R.Civ.P., class treatment that extended discussion of this issue is unnecessary. See e. g. *Doe v. Mundy*, 514 F.2d 1179 (7th Cir. 1975), *John Jones, M.D. v. Smith*, 474 F.Supp. 1160 (S.D. Fla.1979); *Baird v. Department of Public Health of the Commonwealth of Massachusetts*, Case No. 73–3869–MA (D.Mass.1978), *reversed on other grounds*, 599 F.2d 1098 (1st Cir. 1979); *Wynn v. Scott*, 449 F.Supp. 1302 (N.D.Ill.1978); *Gary-Northwest Indiana Women's Services, Inc. v. Bowen*, 421 F.Supp. 734 (N.D.Ind.1976), *affirmed* 429 U.S. 1067, 97 S.Ct. 799, 50 L.Ed.2d 785 (1977); *Doe v. Turner*, 361 F.Supp. 1288 (S.D.Iowa 1973), *affirmed*, 488 F.2d 1134 (8th Cir. 1973).

■ The state's argument that the clinic is not a proper representative class plaintiff because it has voluntarily complied with some of the rule imposed requirements presently under attack borders on the frivolous.

The Court finds that the Florida Women's Medical Clinic and Drs. Wachtel and Benjamin should be certified as representative class plaintiffs on behalf of (1) all facilities in the state of Florida which provide first trimester pregnancy terminations, (2) all physicians who perform first trimester pregnancy terminations in the state of Florida, and (3) all pregnant females who

desire a first trimester pregnancy termination in the state of Florida.

■ The sole issue presently before the Court for resolution is whether Florida Statutes 390.011–390.021 (1978 Supp.) and the rules promulgated thereunder by the Department of Health & Rehabilitative Services, Florida Administrative Code, Chapter 100–72, constitute an unconstitutional infringement upon the plaintiff's right of privacy. See *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); and *Sendak v. Arnold*, 429 U.S. 968, 97 S.Ct. 476, 50 L.Ed.2d 579 (1976).

The Abortion Clinics Law, F.S. 390.011–390.021 (1978 Supp.) requires all facilities in which pregnancy terminations are performed (other than hospitals and doctors' offices not primarily used for pregnancy terminations) to apply for and to be licensed by the Department of Health & Rehabilitative Services. The statute delegates to the Department the authority to promulgate and enforce rules regulating the operation of pregnancy termination clinics. Specifically F.S. 390.012 (1978 Supp.) states as follows:

> The department shall have the authority to develop and enforce standards for the health, care, and treatment of persons in abortion clinics and for the safe operation of such clinics, and to that end it may adopt and enforce rules necessary and proper to carry out such standards. These rules shall be comparable to rules which apply to all surgical procedures requiring approximately the same degree of skill and care as the performance of first trimester abortions. The rules shall be reasonably related to the preservation of maternal health of the clients. The rules shall not impose a legally significant burden on the woman's freedom to decide whether to terminate her pregnancy. The rules shall provide for, but shall not be limited to:

> (1) The establishment of minimum standards for the care and treatment of clients of an abortion clinic;

> (2) The availability of aftercare services and emergency medical services to be administered by a hospital; and

> (3) The transportation of patients requiring emergency care from an abortion clinic to a licensed hospital.

The law provides a one year period of transition within which presently existing clinics may come into compliance with the rules and regulations promulgated by the Department. F.S. 390.013. Should a clinic fail to maintain the standards prescribed by the department the statutes provide for a suspension or revocation of a clinic's license, F.S. 390.017, or for an administrative penalty of $1,000 per violation. F.S. 390.018.

Relying upon the authority delegated it by F.S. 390.012 the Department of Health & Rehabilitative Services, on January 30, 1979, filed with the Secretary of State a compilation of rules which took effect twenty days later. See Appendix "A". As previously noted, however, this Court preliminarily enjoined the enforcement of these rules on March 16, 1979.

Without a specific or implied delegation of authority the Department of Health & Rehabilitative Services promulgated Rule 10D–72.03, subsection 2 of which states that "each patient admitted (to a clinic) for an abortion shall have a confirmed gestation diagnosis of no more than thirteen (13) weeks." This thirteen week period is commonly referred to as "the first trimester." (Oddly enough the Florida legislature never used the phrase "third trimester" but took the time to define it. Conversely, "first trimester" though employed in the act, is never defined.)

The rules, therefore, limit a clinic's work to performing *only* first trimester pregnancy terminations; and the regulations promulgated by the department *only* apply to those doctors and clinics in the performance of first trimester pregnancy termination procedures.

The delegating statute states that the department's rules shall be directed at "the

preservation of maternal health of the clients" of the clinic. F.S. 390.012.

The United States Supreme Court in the landmark decision of *Roe v. Wade, supra,* found that the constitutional "right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, . . . or . . ., in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Id.,* 410 U.S. at 153, 93 S.Ct. at 727. The Supreme Court specifically noted, however, that this right is not absolute, but must be considered in light of the states important and legitimate interests.

Because this right of personal privacy is a "fundamental right", any attempt by the state to limit the right must be supported by a *"compelling state interest." Id.* at 155, 93 S.Ct. 705. Even when supported by an identifiable compelling state interest, the legislative enactment which encroaches upon an individual's fundamental right of privacy "must be narrowly drawn to express *only* the legitimate state interests at stake." *Id.*

The state's argument in the case at bar that it has a "legitimate interest in protecting the health and safety of women who desire a first trimester abortion" manifests the state's failure to fully comprehend the significance of the Supreme Court's holding that a *"compelling* state interest" is necessary to justify an intrusion into a fundamental constitutional right.

This Court is not unmindful of the Supreme Court's recognition that the state has a legitimate interest in the health and welfare of pregnant women contemplating a pregnancy termination, as well as a legitimate interest in protecting "the potentiality of human life." *Id.* at 162, 93 S.Ct. 705. As the Supreme Court stated:

. . . Each grows in substantiality as the woman approaches term and . . This is so because of the now-established medical fact, referred to above at 149, that until the end of the first trimester mortality in abortion may be less than

mortality in normal childbirth . . . This is so because the fetus then presumably has the capability of meaningful life outside the mother's womb. State regulation protective of fetal life after viability thus has both logical and biological justifications. . . . *Id.* at 162–164, 93 S.Ct. at 731–732.

This Court concludes, as did the Supreme Court in *Roe v. Wade, supra,* that the rules implementing Florida Statutes 390.011– 390.021 "sweep too broadly."

The rules may be constitutionally permissible as applied to facilities performing second and third trimester pregnancy terminations based upon either (a) the state's compelling interest in the health and welfare of pregnant women during the second and third trimester, or (b) the state's interest in the "potentiality of life" which interest becomes compelling during the third trimester. This Court need not, however, decide these issues. The state has failed to carry its burden of sufficiently identifying a compelling state interest warranting regulation of a first trimester pregnancy termination. Thus, the Court holds that Chapter 10D–72 of the Florida Administrative Code is unconstitutional and the defendants are hereby permanently enjoined from enforcing them.

The Florida Abortion Clinic Law, Chapter 78–382, Laws of Florida, F.S. 390.011–390.-021 (1978 Supp.) does not, however, attempt to regulate first trimester pregnancy terminations with the exception of requiring facilities performing such procedures to be licensed. The Court finds that the licensing requirements of the statute, once sterilized by this court's determination that the rules are unconstitutional and unenforcible, are not an objectionable intrusion into the constitutionally protected right of privacy. See, *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *Connecticut v. Menillo,* 423 U.S. 9, 96 S.Ct. 170, 46 L.Ed.2d 152 (1975); and *Friendship Medical Center Ltd. v. Chicago Board of Health,* 505 F.2d 1141, 1150 n. 13 (7th Cir. 1979), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680

(1975); Cf. *Baird v. Department of Public Health of the Commonwealth of Massachusetts*, 599 F.2d 1098 (1st Cir. 1979).

The preliminary injunction entered in this cause on March 16, 1979 preliminarily enjoining enforcement of both the statutes and the rules is hereby vacated, and an injunction permanently enjoining enforcement of the rules only will hereafter be entered.

## APPENDIX A

### CERTIFICATION OF ADMINISTRATIVE RULES
### FILED WITH THE DEPARTMENT OF STATE

(Pursuant to Chapter 120, Florida Statutes)

I hereby certify that the attached rule is a correct copy as filed on 1/30/79.

### FLORIDA DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES

| Rule Number | Specific Rule Making Authority | Law Being Implemented, Interpreted or Made Specific |
|---|---|---|
| 10D–72.01 | § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, Florida Statutes | Chapter 78–382, Laws of Florida |
| 10D–72.02 | § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, Florida Statutes | Chapter 78–382, Laws of Florida |
| 10D–72.03 | § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, Florida Statutes | Chapter 78–382, Laws of Florida |
| 10D–72.04 | § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, Florida Statutes | Chapter 78–382, Laws of Florida |
| 10D–72.05 | § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, Florida Statutes | Chapter 78–382, Laws of Florida |
| 10D–72.06 | § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, Florida Statutes | Chapter 78–382, Laws of Florida |
| 10D–72.07 | § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, Florida Statutes | Chapter 78–382, Laws of Florida |
| 10D–72.08 | § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, Florida Statutes | Chapter 78–382, Laws of Florida |
| 10D–72.09 | § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, Florida Statutes | Chapter 78–382, Laws of Florida |

### STATE OF FLORIDA
### DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES
### CREATING CHAPTER 10D–72 FLORIDA ADMINISTRATIVE CODE
### ABORTION CLINICS

| | |
|---|---|
| 10D–72.01 | PURPOSE |
| 10D–72.02 | DEFINITIONS |
| 10D–72.03 | LICENSURE REQUIREMENTS |
| 10D–72.04 | LICENSURE PROCEDURES |
| 10D–72.05 | SURGICAL SERVICES |
| 10D–72.06 | NURSING SERVICES |
| 10D–72.07 | MEDICAL RECORDS |
| 10D–72.08 | LABORATORY SERVICES AND FACILITIES |
| 10D–72.09 | SANITATION, HOUSEKEEPING AND MAINTENANCE |

STATE OF FLORIDA

DEPARTMENT OF HEALTH AND
REHABILITATIVE SERVICES

CREATING CHAPTER 10D–72 FLORIDA
ADMINISTRATIVE CODE

ABORTION CLINICS

**10D–72.01 PURPOSE**

That the Department of Health and Rehabilitative Services, license, inspect, set fees, and regulate abortion clinics in accordance with Chapter 78–382, Laws of Florida. Providing for renewal, denial, suspension and revocation of licenses; providing administrative penalties; and prohibiting certain acts.

Specific Authority: § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, F.S.

Law Implemented: § 2, Chapter 78–382, Laws of Florida

History: New

**10D–72.02 DEFINITIONS**

(1) "Abortion Clinic" or "clinics" means any facility in which abortions are performed, other than a hospital or a physician's office which is not used primarily for the performance of abortions.

(2) "Department" means the Department of Health and Rehabilitative Services.

(3) "Hospital" means a facility licensed under Chapter 395, Florida Statutes.

(4) "Physician" means a physician licensed under Chapter 458 or Chapter 459, Florida Statutes, or a physician practicing medicine or osteopathy in the employment of the United States or this State.

Specific Authority: § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, F.S.

Law Implemented: § 1, Chapter 78–382, Laws of Florida

History: New

**10D–72.03 LICENSURE REQUIREMENTS**

Abortion clinics shall meet comparable requirements applicable to facilities licensed in the State of Florida to perform surgical procedures requiring approximately the same degree of skill and care as the performance of first trimester abortions. These facility requirements though related to the health of the patients, shall not infringe upon the woman's realistic access to terminate her pregnancy.

(1) All abortions shall be performed by a physician licensed according to Chapter 458 or Chapter 459, Florida Statutes, or a physician practicing medicine or osteopathy in the employment of the United States or this State.

(2) Each patient admitted for an abortion shall have a confirmed gestation diagnosis of no more than thirteen (13) weeks.

Specific Authority: § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, F.S.

Law Implemented: § 4, Chapter 78–382, Laws of Florida

History: New

**10D–72.04 LICENSURE PROCEDURES**

(1) Application for a license to operate an abortion clinic shall be made to the Department on forms furnished for that purpose. The application shall be accompanied by the applicable license fee. The application which shall be notarized, shall contain the following:

(a) The name and address of the applicant if the applicant is an individual, or if the applicant is a firm, partnership, or association, the name and address of each member thereof, or if the applicant is a corporation, its name and address and the name and address of each of its officers.

(b) The name by which the clinic is to be known.

(c) The location of the clinic for which application is made and supervision under which the clinic will be operated.

(d) The name of the person or persons under whose management or supervision the clinic will be operated.

(e) Document the qualifications of providers of services, including the license numbers of the physicians performing the abortions.

(f) The following documents shall accompany the initial application: identification of ownership and responsible authority; descriptive plan including physical plant; location; zoning compliances statement and identification of manager or director.

(2) Each license shall be valid only in the hands of the person to whom it is issued and shall not be subject to sale, assignment, or other transfer, voluntary or involuntary, nor shall a license be valid for any premises other than for which originally issued. The licensing agency shall be notified as far in advance as possible (at least thirty (30) days) when change of ownership is being considered, and an application for new license shall be made in each case of change of ownership. Each license shall be returned to the agency immediately upon change in ownership or classification, suspension, revocation or voluntary cessation of operations.

(3) Representatives of the licensing agency shall have the right to enter upon the premises of any facility licensed, or applying for license, pursuant to this Chapter, at any reasonable time in order to determine the state of compliance of the provisions of Chapter 78–382, Laws of Florida, and these rules.

(4) When the facility is in compliance with rules, an annual license will be issued by the licensing agency. This license shall be displayed in a conspicuous place.

(5) The license issued to any facility may be suspended, revoked or denied by the department in any case where the licensing agency finds there has been substantial failure to comply with provisions of Chapter 78–382, Laws of Florida, or any rules of the licensing agency. A fine may be imposed in lieu of suspension or revocation of license.

(6) A licensee shall notify the licensing agency of impending closure of a facility thirty (30) days prior to closure. The facility shall be responsible for advising the licensing agency as to the location of medical records.

(7) Fees will accompany application and shall be $1.00 times the daily patient capacity of the clinics; provided the fees shall not be less than $35.00 nor more than $75.00.

Specific Authority: § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, F.S.

Law Implemented: §§ 4, 5, 6, 7, and 9, Chapter 78–382, Laws of Florida

History: New

10D–72.05 SURGICAL SERVICES

(1) Abortions shall be performed only by Florida licensed physicians, under Chapter 458 or Chapter 459, Florida Statutes, or by a physician practicing medicine or osteopathy in the employment of the United States or this State.

(2) There must be at all times physician availability in the area, so that patients with complications can obtain help.

(3) Ambulance transport services must be available, so patients can be moved to a hospital within 30 minutes time from the decision to do so.

(4) Abortion clinics shall provide facilities consistent with the needs to perform abortion procedures. As a minimum they shall include or have available the following:

(a) A surgical operating room, having a usable floor area of at least 80

square feet containing an operating room table or examining table, surgical lamp, suction outlet or machine, piped oxygen or tank, intravenous supplies and instrument stands. There shall be provided an accessible autoclave, scrub facilities and storage for surgical supplies, including sterile supplies.

(b) Intravenous needles and tubing plus six (6) liters of sterile Ringers lactate or other appropriate intravenous fluids. Also emergency drugs.

(c) There shall be provisions for dignity and privacy of the patient. Adequate suction outlets or portable suction machines and oxygen or portable tanks should be accessible.

(d) Clean and soiled utility facilities for cleaning and storage for all supplies, equipment, utensils and linen.

(e) A scrub area for the physicians and nurses.

(f) Toilet facilities for both the personnel and the patients.

(5) Flammable anethesia is prohibited in facilities not licensed as hospitals or hospitals not regularly providing obstetrical, gynecological or surgical services unless the operating room and supporting facilities meet the requirements of NFPA 56A, Standards for the Use of Inhalation Anesthestics, 1970 for anexthetizing locations.

(6) A patient who has undergone a procedure which is producing hemorrhage, shock, respiratory depression or other serious complications shall be transferred to a hospital, when in the judgment of the attending physician it is determined medically necessary. If for other reasons, it is considered by the attending physician unsafe to release the patient and an overnight stay is necessary, she shall be transferred to a licensed hospital for such care as necessary. All patients shall remain in the clinic for observation and care until it has been determined that the patient's condition has stabilized to a point where she may be released without jeopardy to her health and safety.

(7) Each abortion clinic shall instruct post abortion follow-up for each patient. This follow-up shall include a post abortion examination by a physician who shall provide further treatment, as appropriate.

Specific Authority: § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, F.S.

Law Implemented: § 2, Chapter 78–382, Laws of Florida

History: New

## 10D–72.06 NURSING SERVICES

An abortion clinic shall provide a registered nurse licensed in accordance with Chapter 464, Florida Statutes, or a physician on duty, physically present in the facility, at all times during which a patient is maintained in the facility together with such additional personnel as may be required to provide services consistent with good medical and nursing standards of practice.

Specific Authority: § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, F.S.

Law Implemented: § 2, Chapter 78–382, Laws of Florida

History: New

## 10D–72.07 MEDICAL RECORDS

(1) A medical record shall be maintained on each patient accepted for an abortion and kept for at least a three (3) year period. This record shall include a written informed consent.

(2) The medical record shall contain the original of the following: identification data sheet; physical examination; current obstetrical history and diagnosis; pathology report; and all pertinent clinical information including surgical procedures performed, complications, medications, treatments administered, progress notes, and condition of discharge.

(3) A report of each termination of pregnancy procedure shall be made to the Administrator of Vital Statistics, De-

partment of Health and Rehabilitative Services, on forms provided for that purpose. A copy of the termination of pregnancy report required to be filed with the Department of Health and Rehabilitative Services, shall be maintained in the patient's medical record. This report shall include as a minimum the clinic identification number assigned to the patient, so as to maintain confidentiality, age, race, marital status, gestational age as determined by vaginal examination, and date of pregnancy termination. Any alternative counseling by physician trained or appropriate degreed personnel should be included in this report.

Specific Authority: § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, F.S.
Law Implemented: § 2, Chapter 78–382, Laws of Florida
History: New

## 10D–72.08 LABORATORY SERVICES AND FACILITIES

(1) In all abortion clinics, clinical laboratory services provided preoperatively to each patient, shall as a minimum include: pregnancy test, urinalysis, hemoglobin or hematocrit, serology and blood Rh factor. RH° anti (d) Immune Globin (Humane) shall be offered and provided to all negative patients who have not been sensitized. These services shall be provided through a laboratory registered in accordance with Chapter 483, Florida.

(2) In all cases, products of conception must be examined in a pathologist's laboratory registered under Chapter 483, Florida Statutes, and reports of such examinations, shall be filed in the patient's record.

Specific Authority: § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, F.S.
Law Implemented: § 2, Chapter 78–382, Laws of Florida
History: New

## 10D–72.09 SANITATION, HOUSEKEEPING AND MAINTENANCE

An abortion clinic shall develop and implement effective infection control measures and shall maintain the total environment, furniture, surfaces, equipment, and supplies in clear and safe condition and good repair. Contaminated wastes, linens and supplies shall be kept and transported in covered containers specifically for the purpose.

Specific Authority: § 2, Chapter 78–382, Laws of Florida; § 381.031(1)(g)11, F.S.
Law Implemented: § 2, Chapter 78–382, Laws of Florida
History: New

DRAFT OF APPLICATION FORM

Licensure Application
ABORTION CLINIC

STATE OF FLORIDA

Licensure Application
ABORTION CLINIC

DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES
OFFICE OF LICENSURE AND CERTIFICATION

Name of CLINIC

Name of CLINIC OWNER

Street Address/P.O. Box Zip

Address/P.O. Box Zip

City County

City State

Telephone No.

Telephone No.

(Licensure use only)

To: Office of Licensure and Certification
 P.O. Box 210
 Jacksonville, Florida 32231

Receipt No.
License No.

Approved

SUBJECT: Application for _____ licensure.
 (year)

Under the authority of Chapter 390 Florida Statutes, and Chapter 10D–72 of the Florida Administrative Code, application is hereby made to operate an ABORTION CLINIC.

If application is for change of operational ownership give effective date of change. A check in the amount of $ _____ license fee is attached.*

## I. GENERAL INFORMATION CONCERNING THE CLINIC

1. (a) If the ownership is a firm, partnership or association, name and address of every member. Attach extra sheets if required.

_____
_____
_____
_____
_____

 (b) If the ownership is a corporation, give the name and address of

 President _____
 Vice President _____
 Secretary _____
 Treasurer _____

* NOTE: Instructions for preparation of this application are on the last page. Please read.

HRS FORM

## II. REPORT OF PERSONNEL ON CLINIC STAFF

Provide the information indicated on all personnel employed, including title, position held and current registration or certification number if applicable. Attach extra sheets if required.

| FULL NAME SURNAME LAST | JOB TITLE | STATUS | REGISTRATION NO. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## III. AFFIDAVIT

I, _____, hereby swear (or affirm) that the statements in this application are true and correct. AND THAT THE LOCAL ZONING ORDINANCES PERMIT THE OPERATION OF AN ABORTION CLINIC AT THIS LOCATION.

Subscribed and sworn to before me this _____ day
of _____, 19____

_____ _____
Notary Public Signature of Chief Executive Officer

INSTRUCTIONS FOR PREPARATION OF LICENSURE APPLICATION FORM

LICENSE FEE: The statutory license fee of $1 TIMES THE AUTHORIZED PATIENT CAPACITY OF THE CLINIC, MINIMUM $35, MAXIMUM $75.

II. GENERAL INFORMATION: Data required must be completed and information called for must be provided.

HRS FORM