### STATE OF CONNECTICUT *v.* CHESTER ORSINI

PETERS, HEALEY, PARSKEY, SHEA and F. HENNESSY, Js.

---

Argued March 4—decision released June 1, 1982

*John R. Williams,* for the appellant (defendant).

*Robert E. Beach, Jr.,* special assistant state's attorney, for the appellee (state).

SHEA, J. The defendant was convicted of larceny in the second degree in violation of General Statutes § 53a-123 (a) (2) and also of conspiracy to commit larceny in the second degree in violation of General Statutes § 53a-48 after a jury trial. In a later proceeding he was also found guilty of being a persistent felony offender in violation of General Statutes § 53a-40 (b). In his appeal from the judgment the defendant claims (1) that his right of cross-examination was unconstitutionally infringed by

rulings which sustained objections to his questions concerning the prior misconduct of two witnesses for the state; (2) that his convictions are invalid because of improper venue; (3) that his conviction of conspiracy is a nullity because of a defect in the wording of that count of the information; (4) that two comments made by the trial judge in the course of the charge to the jury were improper and prejudicial; (5) that his conviction as a persistent felony offender under the second part of the information, in accordance with the procedure set forth in Practice Book § 619, is vitiated by the fact that the previous felony relied upon was a violation of General Statutes § 53-29, which prohibits anyone from assisting in procuring an abortion and, the defendant maintains, was implicitly declared unconstitutional in *Roe* v. *Wade,* 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973). See *Abele* v. *Markle,* 369 F. Sup. 807 (D. Conn. 1973); *State* v. *Menillo,* 168 Conn. 266, 362 A.2d 962, vacated, 423 U.S. 9, 96 S. Ct. 170, 46 L. Ed. 2d 152 (1975), on remand, 171 Conn. 141, 368 A.2d 136 (1976); and (6) that his trial attorney[1] was so inept that the defendant was deprived of the effective assistance of counsel. We find no error sufficient to warrant a new trial and we affirm the judgment.

Although no claim that the evidence was insufficient to support the findings of guilty has been raised, a brief summary of the facts which might reasonably have been found in support of the verdicts furnishes a useful background for evaluation of the defendant's claims. In late December one Morris Ashcroft and two companions broke into a home in Westbrook and removed several

---

[1] At the trial the defendant was represented by a different attorney from the one who represented him on this appeal.

antique guns from a chest in the basement. Through an intermediary, Ashcroft met the defendant at a gas station in Westbrook and sold him the guns for $300, informing him that they were stolen and narrating the circumstances of the burglary.

Several days afterward Ashcroft reentered the same house in Westbrook and took some more guns. He telephoned the defendant and arranged to meet him at a store in Westbrook, telling him he had stolen some other guns from the same place. When they met, the defendant purchased these guns for $500.

A week or two later Ashcroft, this time with one companion, stole some rifles[2] as well as other items from the Westbrook residence. The defendant met Ashcroft at a restaurant in Meriden as a result of a telephone conversation and he bought the rifles for $800. At this meeting Ashcroft signed a receipt indicating a price of $2500 for the rifles. There was testimony that all of the stolen guns, which were admitted in evidence at the trial, had a value of $13,925.

## I

During oral argument the defendant focused mainly upon the rulings of the court made during the cross-examination of two witnesses for the prosecution who had participated with Ashcroft in burglarizing the house in Westbrook. Each of them was asked whether he had broken into any other houses in the Westbrook area with Ashcroft and objections by the state were sustained. No exceptions to the rulings were taken as required by Practice Book § 288. Faced with this obstacle to review of the rulings, the defendant argues that

[2] The guns previously stolen were presumably pistols.

precluding him from this inquiry into the prior misconduct of these witnesses was an error of constitutional dimension falling within the exception created by *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), for such situations.

The defendant relies upon the holding of *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), that undue restriction upon cross-examination of prosecution witnesses for bias or interest, particularly with respect to bargains made concerning the disposition of criminal charges against those witnesses, violates the constitutional right of confrontation. See *State* v. *Annunziato,* 174 Conn. 376, 379, 387 A.2d 566 (1978). That principle is wholly inapplicable to the questions which are the subject of the rulings challenged here. Not only do these inquiries make no reference to pending criminal charges against the witnesses, whether formally presented or at some preliminary stage, but no claim of such a purpose was made at trial. Facially the questions appeared to be designed to attack the character of the witnesses by proof of prior specific acts of misconduct other than felony convictions in violation of the general prohibition against such evidence. *State* v. *Zdanis,* 173 Conn. 189, 191, 377 A.2d 275 (1977); *State* v. *Martin,* 170 Conn. 161, 167, 365 A.2d 104 (1976); *Richmond* v. *Norwich,* 96 Conn. 582, 597, 115 A. 11 (1921); *Verdi* v. *Donahue,* 91 Conn. 448, 454, 99 A. 1041 (1917). The exception, which allows, in the discretion of the trial court, proof of particular acts having a special significance upon the issue of veracity, cannot be said to require the admission of evidence that a witness has engaged in an unrelated burglary at some time in the past. *Vogel* v. *Sylvester,* 148 Conn. 666, 675, 174 A.2d 122 (1961); *Shailer* v.

*Bullock,* 78 Conn. 65, 69, 61 A. 65 (1905). The exclusion of such evidence, therefore, does not deprive the defendant of any constitutional right and the ruling is not further reviewable because of the absence of any exceptions. Practice Book § 288. The defendant was not inhibited by these rulings from exploring the motivations of the witnesses for testifying in relation to the disposition of any pending criminal charges, inquiries which were in fact vigorously pursued at trial without restriction.

## II

The claim of improper venue has also been raised for the first time in this appeal rather than in the trial court.[3] Venue requirements are created for the convenience of the litigants and may be waived by failure to assert the statutory privilege in timely fashion. 77 Am. Jur. 2d, Venue § 45. Subject matter jurisdiction, which cannot be conferred upon the court by the parties, must be distinguished from venue. Ibid.; *Fine* v. *Wencke,* 117 Conn. 683, 684,

---

[3] The defendant claimed that venue was improper because the bill of particulars alleged that the larceny charged in the first count of the information occurred in Meriden, which is situated within the county of New Haven. Each of the six counts of the original information stated that the place of the crime was Westbrook in Middlesex County. The evidence was that the guns were stolen from a house in Westbrook and were delivered to the defendant in Meriden as a result of meetings with the defendant in Westbrook. General Statutes § 54-77 (Rev. to 1977) provided in part that "when theft is committed in one county or judicial district and the property stolen is carried into another county or judicial district, the offender may be tried in either county or judicial district." The defendant concedes that he could have been tried in either New Haven County or Middlesex County, but maintains that once the bill of particulars was filed indicating that the larceny charged in the first count had occurred in Meriden, that amendment to the information required that the trial of that count be held in New Haven County. Our view that this claim involves neither jurisdiction nor a violation of a fundamental constitutional right makes it unnecessary to consider its merits further.

169 A. 58 (1933); *Mower* v. *State Department of Health,* 108 Conn. 74, 77, 142 A. 473 (1928). Practice Book §§ 809 and 810 provide that a request for transfer of prosecution must be made before trial or shall otherwise be deemed to be waived. General Statutes § 54-1d expressly provides that "[a] criminal cause shall not fail on the ground that it has been submitted to a session of improper venue."

Recognizing the necessity of converting his statutory venue privilege into a constitutional right for the purpose of obtaining appellate review of the venue error claimed, the defendant, during oral argument, though not in his brief, advanced the proposition that venue in a criminal case invokes the fundamental right of trial by jury which is not waivable except at the express election of the defendant personally in open court. See *Roseman* v. *United States,* 364 F.2d 18, 27 (9th Cir. 1966), cert. denied, 386 U.S. 918, 87 S. Ct. 880, 17 L. Ed. 2d 789 (1967); *Hawkins* v. *United States,* 385 A.2d 744, 747 (D.C. App. 1978); *Russell* v. *State,* 342 So. 2d 96, 97 (Fla. App. 1977). The basis for this position is that at common law a jury must generally have come from the vicinage or neighborhood where the crime occurred, a rule emanating from the character of the ancient jury as a body of people from the immediate area of the crime having some acquaintance with the persons and events involved who could rely upon their previous knowledge in reaching a verdict. 47 Am. Jur. 2d, Jury § 25. This conception of jurors as being informed about a case prior to trial is, of course, at variance with our present view that a verdict must be based solely upon the evidence presented at trial. *United States* v. *Howard,* 506 F.2d 865, 867 (5th Cir. 1975); *State* v. *McCall,* 187 Conn. 73, 444 A.2d 896 (1982).

Even if the defendant were entitled to a jury composed of jurors from New Haven County rather than from Middlesex County, as he contends, we are not convinced that this privilege, which is wholly statutory in origin, is so fundamental that it may not be waived without the full panoply of safeguards applicable to a plea of guilty or an election of a trial without a jury.[4] We are not aware of any authority supporting this claim of the defendant and we are not inclined to begin a parade of precedent in that direction. We conclude that the failure to request a change of venue before trial precludes any review of the defendant's claim of improper venue on its merits.

## III

The defect in the wording of the information which is claimed to nullify his conviction of conspiracy was raised in the trial court by the defendant during his argument of a motion for acquittal[5] at the close of the evidence presented by the state. The sixth count of the information, charging the crime of conspiracy upon which a guilty verdict was rendered, alleged that the defendant "did combine, conspire, confederate and agree with [others] to commit the crime of conspiracy to Commit Larceny in the Second Degree . . . in violation of Sections 53a-48 (a) and 53a-123 (a) (2) of the Penal Code." As the defendant maintains, there is no such crime as a conspiracy to conspire to commit some offense. Although a motion for a bill of par-

---

[4] Article VI of the United States Constitution provides in part that "the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed . . . ."

[5] The defendant erroneously referred to this motion as a motion to dismiss. See Practice Book §§ 815, 884.

ticulars was addressed to this count before trial seeking "the exact date, time and place" of the alleged conspiracy and a response thereto was filed, no pretrial motion was made pointing to this defect in the wording of the information as required. Practice Book § 809 (1). The failure to raise a defect in the information before trial by a motion to dismiss upon that ground constitutes a waiver thereof. Practice Book §§ 809 (1), 810, 815 (2). It does not appear that the defendant sought any correction of the information when he called the deficiency to the attention of the trial court in arguing for an acquittal. In denying his motion the court noted that "there is a sort of redundancy . . ." in the wording of this count but concluded that the statutory references made clear which crime was charged and that there had been no surprise or prejudice. Practice Book § 625 implicitly allows an information to charge an offense by referring only to the statute which has been violated, but requires the prosecutor to amend it by a statement of the essential facts constituting the crime upon the written request of a defendant. No such request was made in this case, and, as previously mentioned, the motion for a bill of particulars sought only the time and place of the conspiracy.

In instructing the jury upon this count of the information the trial court did read the information without comment upon the error in wording which had been observed. The court summarized this count, however, as charging the defendant "with having committed the crime of conspiracy to commit larceny in the second degree . . ." and thoroughly explained the elements necessary for a conviction. No error is claimed in this portion of the charge. We conclude that the defect in the information was

waived by the failure of the defendant to seek a correction of it and that, in any event, he was not prejudiced because the crime of which he was convicted was adequately explained in the charge.

## IV

The errors claimed in the charge to the jury are the instructions on (1) the significance of the date of the crime as alleged in the information and (2) the choice to be made in deciding whether to believe the witnesses for the prosecution or those for the defense.

## A

The first count of the information alleged that the defendant committed larceny in the first degree "on or about the 3rd day of January, 1975 . . . ." The bill of particulars, filed in response to a motion of the defendant, specified that "on or about January 7, 1975 . . ." the defendant had purchased some antique guns in Meriden knowing that they had been stolen. The trial court noted this discrepancy between the dates of the crime as alleged in the information and in the bill of particulars and instructed the jury as follows: "Now, as far as the date of the crime is concerned, as to these two dates,—the law does recognize that if the evidence proves the crime within that general area, so there is no element of surprise, so it is on the particular date that is given, it really doesn't matter whether it is the specific date that is given. So I would suggest to you that you not overemphasize these two dates." No exception was taken to this portion of the charge as required by Practice Book § 854.

Once again the defendant seeks review of a claimed error despite his failure to preserve it in the trial court for presentation on appeal. He

claims that his constitutional right "to be informed of the nature and cause of the accusation" as provided by the sixth amendment of the constitution of the United States was infringed by the court's instructions. It is essential that an information comply with this requirement in order that a defendant may be able to prepare for trial and, after judgment, be able to plead that record in bar of a further prosecution for the same offense. *Wong Tai* v. *United States,* 273 U.S. 77, 80, 47 S. Ct. 300, 71 L. Ed. 545 (1927). The defendant's claim is, therefore, reviewable to determine whether this constitutional right of his was violated. *State* v. *Evans,* supra. Our first observation is that the import of the language used by the trial court is not entirely clear. A fair construction would be that the jury might find the defendant guilty if he committed the crime charged at any time within the "general area" of the two dates, encompassing the period January 3 to January 7 and perhaps extending for some reasonable period beyond these limits.

"It is a well-established rule in this state that 'it is not essential in a criminal prosecution that the crime be proved to have been committed on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the Statute of Limitations.' *State* v. *Lorusso,* 151 Conn. 189, 191, 195 A.2d 429 [1963]." *State* v. *Ramos,* 176 Conn. 275, 276–77, 407 A.2d 952 (1978). Time is not usually an essential element of an offense. Ibid.; *State* v. *Hauck,* 172 Conn. 140, 150, 374 A.2d 150 (1976). Where the lack of a sufficiently definite date is deemed to implicate the right to know the nature of the charge made, actual prejudice in the

preparation or presentation of the defense has been found. In the cases cited by the defendant for this proposition, however, the time alleged has been far more indefinite than the expanded time period sanctioned by the trial court here. *United States* v. *Parente,* 449 F. Sup. 905, 914 (D. Conn. 1978); *Commonwealth* v. *Devlin,* 333 A.2d 888, 892 (Pa. 1975). The defense in this case was not that the sale of the guns to the defendant had not taken place but that the defendant was not aware that the guns were stolen. The defendant has not pointed out how he was prejudiced in making his defense by the challenged instruction. We are not dealing with an erroneous charge upon an essential element of an offense. See *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); *State* v. *Rose,* 169 Conn. 683, 688, 363 A.2d 1077 (1975). The broadening of the time period alleged for the commission of the crime which the trial court effectively permitted had no adverse impact upon the defendant sufficient to constitute a deprivation of his constitutional right "to be informed of the nature and cause of the accusation . . . ."

## B

The defendant did take exception to the portion of the charge relating to the comparative credibility of the prosecution and defense witnesses, though not very clearly.[6] In its summary near the end of the charge, the court advised the jury that they

---

[6] The colloquy concerning the defendant's exception to the charge was as follows:

"MR. ZACCAGNINO: Yes, Your Honor. Just one thing I want to ask Your Honor, you could think about, Your Honor charged, in the last statement you made just before you started to tell them about the deliberations, were in this context, 'If you believe the state's witnesses, you'—something about 'guilty'—you went on to say,

must decide whether the state had proved all the elements of the crimes involved beyond a reasonable doubt. Then followed the challenged instruction: "You will have to decide whether you believe the state's witnesses as to the commission of these crimes, and the participation of the accused, or whether you believe the testimony of the defendant's witnesses as to the defendant's innocence. In essence, it is as simple as that." Instructions similar to these have been termed "comparative credibility" charges and have been widely criticized. *United States* v. *Pine,* 609 F.2d 106, 108 (3d Cir. 1979); *United States* v. *Brown,* 582 F.2d 197, 201–202 (2d Cir.), cert. denied, 439 U.S. 915, 99 S. Ct. 289, 58 L. Ed. 2d 262 (1978); *United States* v. *Guest,* 514 F.2d 777, 780 (1st Cir. 1975). The flaw in such a charge is that it invites the jury to treat the matter of proof as a "fair fight" between the prosecution and the defense rather than as one weighted in favor of the latter by the necessity of proving guilt beyond a reasonable doubt. *United State* v. *Oquendo,* 490 F.2d 161, 166 (5th Cir. 1974) (Gee, J., concurring).

The question before us is not whether this single statement, viewed in isolation from the rest of the charge, can reasonably be regarded as diluting the burden of proof resting upon the state, but whether in the context of the entire charge it can be said to have had that result. A charge cannot be critically

'Or you can believe the defendant's witnesses that tended to prove his innocence.' That might give the opinion that we have to prove that. And we don't have to [do] anything, if they haven't made out a prima facie case.

"THE COURT: I think, considering the whole charge, in that context, that was clear in the beginning.

"MR. ZACCAGNINO: I thought I would bring that out.

"THE COURT: The problem was balancing of the testimony."

dismembered but must be read as a whole. *State* v. *Crawford,* 172 Conn. 65, 69, 372 A.2d 154 (1976). We have frequently in recent years faced a similar problem in analyzing the effect of the instruction that a person is "presumed" to intend the natural consequences of his acts, which was disapproved in *Sandstrom* v. *Montana,* supra, as potentially shifting the burden of proof on the issue of intent to the defendant. See, e.g., *State* v. *Cosgrove,* 186 Conn. 476, 481, 442 A.2d 1320 (1982). Our approach has been to examine the entire charge to determine whether there is any reasonable basis for concluding that the objectionable portion might have had such effect. Ibid. A similar analysis has been applied to the problem created by a "comparative credibility" instruction. *United States* v. *Pine,* supra; *United States* v. *Brown,* supra. Here the trial judge repeatedly stressed that the state had the burden of proving each element of the crimes charged beyond a reasonable doubt. He also advised the jury that the defendant was not obliged to prove his innocence and that no inference could be drawn from his failure to testify. In the context of the entire charge, which occupies forty pages of the appendix to the defendant's brief, the isolated statement under fire cannot reasonably be said to have had any potential for lessening the burden of the state or imposing a burden upon the defendant. *United States* v. *Brown,* supra, 202.

## V

The defendant claims next that his conviction as a persistent felony offender is invalid because the earlier offense relied upon is based upon a statute subsequently declared unconstitutional. Although no such issue was raised in the trial court, it does

involve a violation of a constitutional right reviewable upon the trial record. See *State* v. *Evans,* supra. The second part of the information charged that the defendant was a persistent felony offender in violation of General Statutes § 53a-40 (b) by virtue of his conviction on December 10, 1965 for aiding and abetting an abortion in violation of General Statutes § 53-29. See *United States ex rel. Orsini* v. *Reincke,* 286 F. Sup. 974 (D. Conn.), aff'd, 397 F.2d 977 (2d Cir. 1968); *State* v. *Orsini,* 155 Conn. 367, 232 A.2d 907 (1967). The effect of a conviction as a persistent felony offender is to allow the imposition of a greater term of imprisonment than would otherwise be authorized for the crime committed. General Statutes § 53a-40 (f).

We accept the basic premise advanced by the defendant that a conviction which has been procured in violation of constitutional rights cannot be used to increase the punishment which would ordinarily be permissible. *Baldasar* v. *Illinois,* 446 U.S. 222, 100 S. Ct. 1585, 64 L. Ed. 2d 169, reh. denied, 447 U.S. 930, 100 S. Ct. 3030, 65 L. Ed. 2d 1125 (1980); *United States* v. *Tucker,* 404 U.S. 443, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); *Burgett* v. *Texas,* 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967); cf. *Lewis* v. *United States,* 445 U.S. 55, 100 S. Ct. 915, 63 L. Ed. 2d 198 (1980). The question remains whether the defendant's former conviction for aiding and abetting an abortion in violation of General Statutes § 53-29 was invalid.

The decision in *Roe* v. *Wade,* supra, striking down in its entirety a Texas abortion statute similar to General Statutes § 53-29 was initially thought to invalidate that statute wholly and to render it a nullity. *Abele* v. *Markle,* 369 F. Sup. 807, 809 (D.

Conn. 1973); *State* v. *Menillo,* 168 Conn. 266, 269, 362 A.2d 962, vacated, 423 U.S. 9, 96 S. Ct. 170, 48 L. Ed. 2d 152 (1975), on remand, 171 Conn. 141, 368 A.2d 136 (1976); *State* v. *Sulman,* 165 Conn. 556, 558, 339 A.2d 62 (1973). That view of the effect of *Roe* v. *Wade* subsequently proved to be unwarranted, when the United States Supreme Court in *Connecticut* v. *Menillo,* 423 U.S. 9, 96 S. Ct. 170, 46 L. Ed. 2d 152 (1975), corrected the misleading impression that the broad language of the *Roe* opinion had created by circumscribing its effect more precisely. In remanding for further consideration the court stated expressly that "prosecutions for abortions conducted by nonphysicians infringe upon no realm of personal privacy secured by the Constitution against state interference." *Connecticut* v. *Menillo,* supra, 11. Upon our reconsideration of the case it was held that the conviction of the nonphysician abortionist involved should be upheld. *State* v. *Menillo,* 171 Conn. 141, 368 A.2d 136 (1976).

The defendant maintains that the record is silent upon whether the person whom he was found guilty in 1965 of aiding to commit an abortion was a physician. The facts stated in the opinion of this court affirming that conviction contain no suggestion that any physician participated in the abortion and imply the contrary. The abortion was performed by a person who used the name of "Dr. Walker" as an alias in a motel room with an implement described as a "shoehorn device" while the defendant fed the woman some pills. *State* v. *Orsini,* supra, 370. In those cases where the use of an earlier conviction has been prohibited, there has been some indication in the record, e.g., the absence of a notation of the appearance of counsel, which raised a presumption that a constitutional right had

been violated. *Burgett* v. *Texas,* supra, 114–15. We may infer from the failure of the defendant to raise the issue below in a trial which took place about one year after the clarification of the effect of *Roe* v. *Wade,* supra, by the opinion in *Connecticut* v. *Menillo,* supra, that there was no ground for attacking his prior conviction upon the basis now proposed. In any event our review of claims not seasonably brought to the attention of the trial court is limited, even when constitutional considerations are involved, to those instances where the record clearly demonstrates a deprivation of a fundamental constitutional right. *State* v. *Evans,* supra. The record contains no indication of such a situation in this case.

## VI

The final claim of the defendant is that he did not receive the effective assistance of counsel at trial. As he recognizes in his brief, we are reluctant to resolve this kind of claim upon a direct appeal rather than after a habeas corpus proceeding where facts and circumstances often not disclosed by a trial transcript can be fully developed and the lawyer who represented the defendant at trial can be heard from. *State* v. *Mason,* 186 Conn. 574, 578–80, 442 A.2d 1335 (1982); *State* v. *Just,* 185 Conn. 339, 370–71, 441 A.2d 98 (1981); *State* v. *Barber,* 173 Conn. 153, 154–55, 376 A.2d 1108 (1977). Our review of the deficiencies of trial counsel claimed here indicates no malfeasance so egregious that we would be warranted in deviating from our usual practice.

There is no error.

In this opinion the other judges concurred.