STATE OF CONNECTICUT *v.* KENNETH CATES
(12879)

PETERS, C. J., HEALEY, DANNEHY, CALLAHAN and CELOTTO, Js.

Argued November 4, 1986—decision released March 24, 1987

*Diane Polan,* special public defender, with whom, on the brief, was *Margaret Olney,* law student intern, for the appellant (defendant).

*Carl Schuman,* assistant state's attorney, with whom were *John M. Waddock,* assistant state's attorney, and, on the brief, *Mitchell Goldklang, Mary K. Miller* and *Roseanne Wagner,* law student interns, for the appellee (state).

DANNEHY, J. The defendant, Kenneth Cates, was found guilty by a jury of aiding and abetting a burglary in the third degree in violation of General Statutes

§§ 53a-8 and 53a-103,[1] and of larceny in the second degree in violation of General Statutes (Rev. to 1981) § 53a-123.[2] On appeal, he contends (1) that the trial court erred in denying his motion to suppress certain evidence, (2) that the count of the information charging him with larceny lacked specificity and therefore did not give him adequate notice of the charge against him, and (3) that the evidence was insufficient to establish his guilt on either count beyond a reasonable doubt. We find no error.

The jury could reasonably have found the following facts. On the morning of June 18, 1982, between the hours of 8 and 9:30, the Quinlan residence at 1082 Racebrook Road in Woodbridge was burglarized. The intruder or intruders apparently gained entry to the house by breaking a lock on a sliding glass door of the house. A white mink cape valued at $1200 was stolen from the premises.

Shortly before 9 on the same morning, a Woodbridge resident reported that he had observed two black men in a black Mercury automobile near Racebrook Road. The resident reported the vehicle registration as 595-AYX. Another Woodbridge resident observed two black men running across Racebrook Road shortly

---

[1] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

"[General Statutes] Sec. 53a-103. BURGLARY IN THE THIRD DEGREE: CLASS D FELONY. (a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein. . . ."

[2] At the time of the offense, General Statutes (Rev. to 1981) § 53a-123 provided in part: "(a) A person is guilty of larceny in the second degree when: (1) The property consists of a motor vehicle, (2) the value of the property or service exceeds five hundred dollars, or (3) the property, regardless of its nature or value, is taken from the person of another."

before 9:30 that morning. The males, who appeared to be in their late teens or early twenties, were carrying a white garment and were looking behind them. The defendant is a black male.

On December 14, 1982, members of the North Haven police department conducted a search of the defendant's apartment at 36 Derby Avenue, New Haven, pursuant to a warrant. The officers were searching for certain articles stolen during a burglary in North Haven on October 20, 1982. In the course of their search, the officers observed a white mink cape. After the search, the North Haven police department teletyped a report which listed some of the articles they had observed in the defendant's apartment. Upon reading the report, Detective Dennis Phipps of the Woodbridge police department contacted Detective Peter Hines of the North Haven police department to inquire about the white mink cape that had been seen at the defendant's residence. On December 20, 1982, Hines phoned the defendant to arrange a meeting between the defendant and the two detectives. It was agreed that the men would meet in front of the defendant's apartment building.

When the detectives arrived at the apartment building, they did not see the defendant and so they proceeded up to his apartment. Hines knocked at the door. After he identified himself, the defendant's girlfriend, Marjorie Marshall, who lived with the defendant, opened the door. One of the detectives asked whether there was a white mink cape in the apartment, explaining that such a cape had been stolen from a Woodbridge residence. Marshall replied that she had a white mink cape and that the defendant had given it to her as a gift sometime in August. The detectives asked if they could see the cape for identification purposes, and Marshall complied with the request. Upon examination of the cape, the detectives discovered that the design,

labels and initials sewn into the cape matched the description of the missing Quinlan cape. When Marshall was informed of this, she gave the cape to the detectives stating that if it had been stolen, she did not want it. The evidence revealed that the detectives at no time actually entered the apartment during the conversation with Marshall. Evidence presented at trial also indicated that Marshall owned a charcoal gray Mercury automobile with registration 595-AXY, and that she and the defendant were the only two who drove the car.

## I

The defendant's first claim on appeal is that the court erroneously denied his motion to suppress the mink cape obtained at the defendant's apartment. The basis of the motion was that the warrant authorizing the North Haven police to search the defendant's apartment on December 14, 1982, lacked probable cause. The defendant asserts that because the mink cape was a fruit of this illegal search, it must be suppressed. See *Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

For the defendant to prevail on this claim, we must find not only that the warrant authorizing the December 14, 1982 search was invalid, but also that the seizure of the cape six days later was fatally tainted by the alleged illegality. The state asserts, and we agree, that even assuming the invalidity of the initial search, the voluntary handing over of the cape by Marshall dissipated any taint that might have been created by the warrant. Because of our holding, we need not consider whether the warrant authorizing the search on December 14, 1982, was in fact defective.

Under the exclusionary rule, evidence must be suppressed if it is found to be the "fruit" of prior police illegality. *Wong Sun* v. *United States,* supra, 485. All

evidence is not, however, a "fruit of the poisonous tree" simply because it would not have been discovered but for the illegal action of law enforcement officials. Id., 487–88; see *State* v. *Villafane,* 171 Conn. 644, 655, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977), overruled in part on other grounds, *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984). "Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Wong Sun* v. *United States,* supra, 488, quoting Maguire, Evidence of Guilt (1959) p. 221.

In answering this question, we must first consider whether Marshall voluntarily consented to the seizure of the cape by the police on December 20, 1982. Whether consent has been given voluntarily is a question of fact to be determined by the totality of the circumstances. *Dotson* v. *Warden,* 175 Conn, 614, 619, 402 A.2d 790 (1978). The state bears the burden of establishing such consent. Id., 618. The trial court in this case never reached the question of consent because it found no illegality on the part of the police in conducting the search of the defendant's apartment on December 14, 1982. Ordinarily, this would necessitate a remand on the question of consent. In this case, however, the parties do not dispute that Marshall voluntarily turned over the cape to the officers, and the record reveals that in doing so, she told the officers that if it was stolen, she did not want to have it. These undisputed facts "are tantamount to a finding of consent and must be so treated" even in the absence of an express finding by the trial court. *State* v. *Hanna,* 150 Conn. 457, 471, 191 A.2d 124 (1963).

The voluntary consent of Marshall is only a threshold requirement in determining whether the cape is a tainted fruit of the alleged prior illegality. In *Brown* v. *Illinois,* 422 U.S. 590, 603, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975), the United States Supreme Court rejected the idea that a confession resulting from an illegal arrest is untainted simply because it is "voluntarily" given. It follows from *Brown* that the mere fact a *consent* to a search or seizure is voluntary does not necessarily remove the taint. See *Florida* v. *Royer,* 460 U.S. 491, 501, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *People* v. *Odom,* 83 Ill. App. 3d 1022, 404 N.Ed.2d 997 (1980); 4 W. LaFave, Search and Seizure—A Treatise on the Fourth Amendment (1987) § 11.4 (d), p. 410. The *Brown* court explained that the factors to be considered in determining whether the taint has been dissipated include the temporal proximity of the illegal police action and the discovery of the evidence, "the presence of intervening circumstances," and "the purpose and flagrancy of the official misconduct." *Brown* v. *Illinois,* supra, 603–604; see also *State* v. *Villafane,* supra. When we consider the present case in light of these factors, it is evident that any minimal taint stemming from the allegedly illegal search on December 14, 1982, was sufficiently purged.

Turning to the first factor, the temporal proximity of the two events, the facts indicate that six days elapsed between the initial search and the return to the defendant's apartment. Courts have frequently held that a purportedly voluntary consent given after an illegal arrest or search is nonetheless a tainted fruit when that consent was given very soon after the illegal police action. See, e.g., *United States* v. *Recalde,* 761 F.2d 1448, 1459 (10th Cir. 1985) (consent given promptly after illegal arrest invalid); *United States* v. *Gooding,* 695 F.2d 78, 84 (4th Cir. 1982) (consent occurring "within the same brief continuous encounter" as ille-

gal seizure invalid); *State* v. *Raheem,* 464 So. 2d 293, 297–98 (La. 1985) (consent given within forty minutes of arrest invalid). These decisions imply that a consent given in very close temporal proximity to the official illegality is often a mere submission or resignation to police authority and not necessarily an act of free will. If the alleged consent is not given on the same occasion as the illegality but instead occurs at a later date, it is easier to establish that a consent is untainted. See 3 W. LaFave, supra, § 8.2 (d), p. 195. Because six days passed here between the search of the defendant's apartment and the seizure of the cape, we do not think that Marshall's consent was merely a submission to police authority.

The second consideration articulated in *Brown* v. *Illinois,* supra, concerns the presence of factors intervening between the illegal police action and the consent which would tend to negate any inference that the evidence was obtained by exploitation of the illegality. See *Johnson* v. *Louisiana,* 406 U.S. 356, 365, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972). In this case, the consent to the seizure of the cape was not given by the defendant, the target of the search on December 14, 1982. Instead, it was furnished by Marshall, a third party, who stated that she had been given the cape. In *United States* v. *Ceccolini,* 435 U.S. 268, 277, 98 S. Ct. 1054, 55 L. Ed. 2d 268 (1978), a case which considered whether the testimony of a witness should be suppressed as a tainted fruit of an illegal search, the court observed that, "[t]he time, place and manner of the initial questioning of the witness may be such that any statements are truly the product of detached reflection and a desire to be cooperative on the part of the witness. And the illegality which led to the discovery of the witness very often will not play any meaningful part in the witness' willingness to testify." The reasoning of the *Ceccolini* court can be easily applied to the

present case. When the police returned to the apartment that the defendant shared with Marshall six days after the initial search, they identified themselves and explained the purpose of their visit. After informing Marshall that the cape matched the description of one stolen from a Woodbridge residence, Marshall gave the cape to the officers stating that if the cape was stolen, she did not want it. The time the consent was given (i.e., six days after the search), the place from which it was obtained (at the threshold of the apartment and not in a police station or vehicle), and the proper manner in which the officers conducted themselves lead to the inescapable conclusion that Marshall's handing over of the cape was the "product of detached reflection and a desire to be cooperative." The allegedly illegal search on December 14, 1982, appears to have had little, if any, influence on Marshall's decision to turn over the cape to the police on December 20, 1982.

The final factor to be considered in the *Brown* analysis involves "the purpose and flagrancy of the official misconduct." *Brown* v. *Illinois,* supra. At trial, the defendant clearly stated that he was making no claim of improper police conduct. The record reveals that in conducting the December 14, 1982 search, the police were acting under a warrant which had been issued by a magistrate and later upheld by the trial court judge. They were searching not for the cape but for items involved in an unrelated burglary. When the Woodbridge police learned of the presence of a cape at the apartment, the defendant himself was contacted and a meeting was arranged. The officers who met Marshall at the apartment identified themselves and explained the purpose of their visit. At no point did they actually enter the apartment. From this brief factual recitation, it is abundantly clear that the present case is not one of flagrant police misconduct. We conclude, therefore, that Marshall's voluntary consent to the sei-

zure of the cape was not obtained by exploitation of any alleged prior illegality but instead was an act of her own free will. This consent dissipated any minimal taint arising out of the allegedly illegal search on December 14, 1982. Because of our holding, we need not discuss under the present circumstances whether a good faith exception to the exclusionary rule exists. See *United States* v. *Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677, reh. denied, 468 U.S. 1250, 105 S. Ct. 52, 82 L. Ed. 2d 942 (1984).

## II

The defendant next claims that the count of the information charging him with larceny in the second degree is constitutionally infirm because it fails to specify the date on which he supposedly committed the offense. The information alleged that the larceny of the mink cape was committed "on or after the 18th day of June 1982." The defendant claims that the failure to specify a more precise date renders the information defective as violative of the sixth amendment to the United States constitution and of article first, § 8, of the Connecticut constitution. We cannot agree.

Initially, we note that the defendant never raised this precise claim at trial.[3] Although the record reveals that

[3] The defendant argues that the claim of error was preserved because he excepted to part of the court's instructions on the larceny charge. The challenged portion of the court's charge and defense counsel's objections are as follows:

"The Court: In the course of your deliberations you must also decide if the defendant is guilty of the offense of larceny in the second degree precisely as it is charged in the information. Specifically, in order to find Mr. Cates guilty of this offense you must find that the State has proven to you beyond a reasonable doubt that on or after the eighteenth day of June, 1982, Mr. Cates took, obtained or withheld a white mink cape without any legal justification or excuse, that the white mink cape belonged to Mary Quinlan, that the value of the cape was more than $500 and that Mr. Cates took,

he did move for a bill of particulars seeking, in part, a particularization of the date and time of the alleged offense, the court, for some undisclosed reason, never ruled on the motion. It is, of course, the defendant's burden as appellant to perfect the appellate record. Our usual practice is not to review claims of error not distinctly raised at trial. Practice Book § 4185 (formerly § 3063). We have recognized, however, that an accused has a constitutional right "to be informed of the nature of the charge against him 'with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution

obtained or withheld the cape on or after that day with the specific intention to deprive another person of it. . . .

"The Court: Any exceptions to the charge?

"Ms. Polan: Yes, your Honor, I just have one exception to the charge and that's specifically the following: I think that the charge should have been limited to, on the larceny charge, to whether the State has proved that Mr. Cates obtained, took or withheld the cape on or after June eighteenth and the jury have been specifically told that they were not to find the defendant guilty of that charge if they only found that he was in possession of the white mink coat on December 20, 1982.

"The reason is that the defendant is separately charged in a separate information which is entitled CR6-214419 which is now pending in this court with being in possession of the mink cape on or about December 20, 1982, and the arrest warrant in that file is dated December 22, 1982, to the charge of larceny in the third degree and it specifically includes the white mink cape and its value is also included in that charge.

"I do not believe it's appropriate for the jury in this case to consider that charge and I belive they should have been specifically instructed that if that's what they find he is not guilty in this case.

"The Court: Overruled. You may have an exception.

"Ms. Polan: Exception."

From this passage, it is clear that the defendant was not objecting to the use of the phrase "on or after" June 18, 1982, but was instead requesting that the jury be told that they could not convict him on the larceny count if they found only that he was in possession of the mink cape on the day of the search. This objection did not reasonably alert the court to the deficiencies in the affidavit now advanced, and therefore does not satisfy the requirement of Practice Book § 315 that counsel must "state distinctly the matter objected to and the ground of objection." See *Atlantic Richfield Co.* v. *Canaan Oil Co.*, 202 Conn. 234, 520 A.2d 1008 (1987).

of the same offense . . . .' *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979)." *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986). The potential for encroachment on this constitutional right renders the defendant's claim reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). See *State* v. *Orsini,* 187 Conn. 264, 274, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982).

In our jurisdiction, it is well settled that the crime charged need not be proven to have occurred "on the precise date alleged, it being competent ordinarily for the prosecution to prove the commission of the crime charged at any time prior to the date of the complaint and within the period fixed by the Statute of Limitations." *State* v. *Lorusso,* 151 Conn. 189, 191, 195 A.2d 429 (1963); see also *State* v. *Orsini,* supra. If the lack of a sufficiently definite date implicates the defendant's right to know the nature of the charges against him, however, we will find that the preparation of his defense has been unconstitutionally prejudiced. *State* v. *Orsini,* supra, 274–75.

Although the larceny count here did not specify the exact date of the alleged offense, we are unable to discern how the defendant here could possibly have been misled as to the nature of the offense charged. The only theory of liability for larceny upon which the defendant was prosecuted was that he "did wrongfully take, obtain or withhold" the cape belonging to Mrs. Quinlan. During discovery, the defendant obtained copies of the arrest and search warrants which indicated that the larceny took place on June 18, 1982. At trial, the state introduced evidence, all of which indicated that the larceny occurred on June 18, 1982. The language "on or after" June 18, 1982, in the information appears to have been a technical error which was never seriously challenged by the defendant. Moreover, we fail to see how the language of the information prejudiced the

defendant in the preparation of his defense, in light of the fact that he chose not to testify or to present any evidence in his defense. From this review of the record, it is clear that the defendant was sufficiently informed of the nature of the crime with which he was charged and that the pleadings were definite enough to enable him to plead his conviction in bar of any future prosecution for the larceny of the cape. *State* v. *Orsini,* supra, 275; *State* v. *Sumner,* supra.

### III

The defendant finally contends that the evidence introduced at trial was insufficient to establish his guilt on both counts beyond a reasonable doubt. The evidence produced was largely circumstantial in nature. Although the defendant acknowledges that there is no legal distinction between direct and circumstantial evidence as far as probative force is concerned; see *State* v. *Little,* 194 Conn. 665, 673, 485 A.2d 913 (1984); he points out that the inferences drawn from circumstantial evidence must be rational and not based on mere speculation or conjecture. *State* v. *Kish,* 186 Conn. 757, 768, 443 A.2d 1274 (1982). The thrust of the defendant's argument is that the evidence did not logically support the conclusion that the defendant was present at the scene of the burglary and committed the crimes charged.

In reviewing claims concerning the sufficiency of the evidence, we will construe the evidence in the light most favorable to sustaining the jury's verdict, and will affirm that verdict if it is reasonably supported by the evidence and the logical inferences drawn therefrom. *State* v. *Vincent,* 194 Conn. 198, 206, 479 A.2d 237 (1984); *State* v. *Perez,* 182 Conn. 603, 606, 438 A.2d 1149 (1981). The defendant here was charged with aiding and abetting a burglary in the third degree and of committing larceny in the second degree. Although there was no direct evidence presented, such as finger-

prints or eyewitness testimony, indicating that the defendant had committed the burglary and larceny, the jury heard sufficient circumstantial evidence from which it could reasonably infer that the defendant was guilty of the crimes charged. The jury was informed that on the morning of June 18, 1982, an intruder or intruders broke the lock on a sliding glass door, entered the Quinlan home in Woodbridge, and stole a white mink cape. At about the same time and place at which the burglary occurred, a car similar to the one usually driven by the defendant was seen, and the occupants were identified as two black men.[4] Testimony also revealed that at about the time of the burglary, two black men were seen running across the road where the crime had occurred, carrying a white garment. The stolen cape, inside of which the initials "MHQ" were sewn, was found in the defendant's apartment about six months after the crime took place, and the defendant's only explanation of its presence was that he bought it "on the street."

"[T]he requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition." *State* v. *Foord,* 142 Conn. 285, 295, 113 A.2d 591 (1955). It was well within the province of the jury to discredit any testimony that he had bought the coat on the street, and to infer instead, from all of the evidence presented, that the defendant committed the crimes as charged. Contrary to the defendant's assertions, the six month time span between the burglary

---

[4] We recognize that the Woodbridge resident who saw the car described it as being black in color, whereas the Marshall vehicle was later determined to be charcoal gray. In addition, the registration of the car seen in Woodbridge was reported as 595-AYX, while the license plate of the Marshall vehicle read 595-AXY. We agree with the state that the jury could reasonably have thought that these minor inaccuracies were well within the range of human error.

and the finding of the cape at the defendant's apartment did not make it impossible for the jury to infer that the defendant committed the offenses, especially in light of the fact that initials were sewn inside the cape, making it readily identifiable and not easily disposable. See *United States* v. *Tisdale,* 647 F.2d 91, 93 (10th Cir.), cert. denied, 454 U.S. 817, 102 S. Ct. 95, 70 L. Ed. 2d 86 (1981); *State* v. *Brightman,* 252 Iowa 1278, 1283, 110 N.W.2d 315 (1961). The evidence implicating the defendant, while certainly not overwhelming, when considered in the light most favorable to the state was sufficient to support the jury's verdict of guilty.

There is no error.

In this opinion the other justices concurred.