## CONNECTICUT *v.* MENILLO

No. 74–1569.   Decided November 11, 1975

PER CURIAM.

In 1971 a jury convicted Patrick Menillo of attempting to procure an abortion in violation of Connecticut's criminal abortion statute.   Menillo is not a physician and has never had any medical training.   The Connecticut Supreme Court nevertheless overturned Menillo's conviction, holding that under the decisions in *Roe* v. *Wade*, 410 U. S. 113 (1973), and *Doe* v. *Bolton,* 410 U. S. 179 (1973), the Connecticut statute was "null and void."   As we think the Connecticut court misinterpreted *Roe* and *Doe,* we grant the State's petition for certiorari and vacate the judgment.

The statute under which Menillo was convicted makes criminal an attempted abortion by "any person." [1]   The Connecticut Supreme Court felt compelled to hold this statute null and void, and thus incapable of constitu-

---

[1] Conn. Gen. Stat. Rev. § 53–29:

"Any person who gives or administers to any woman, or advises or causes her to take or use anything, or uses any means, with intent to procure upon her a miscarriage or abortion, unless the same is necessary to preserve her life or that of her unborn child, shall be fined not more than one thousand dollars or imprisoned in the State Prison not more than five years or both."

tional application even to someone not medically qualified to perform an abortion, because it read *Roe* to have done the same thing to the similar Texas statutes. But *Roe* did not go so far.

In *Roe* we held that Tex. Penal Code, Art. 1196, which permitted termination of pregnancy at any stage only to save the life of the expectant mother, unconstitutionally restricted a woman's right to an abortion. We went on to state that as a result of the unconstitutionality of Art. 1196 the Texas abortion statutes had to fall "as a unit," 410 U. S., at 166, and it is that statement which the Connecticut Supreme Court and courts in some other States have read to require the invalidation of their own statutes even as applied to abortions performed by nonphysicians.[2] In context, however, our statement had no such effect. Jane Roe had sought to have an abortion " 'performed by a competent, licensed physician, under safe, clinical conditions,' " *id.*, at 120, and our opinion recognized only her right to an abortion under those circumstances. That the Texas statutes fell as a unit meant only that they could not be enforced, with or without Art. 1196, in contravention of a woman's right to a clinical abortion by medically competent personnel. We did not hold the Texas statutes unenforceable against a nonphysician abortionist, for the case did not present the issue.

Moreover, the rationale of our decision supports continued enforceability of criminal abortion statutes against nonphysicians. *Roe* teaches that a State cannot restrict

[2] See, *e. g., State* v. *Hultgren,* 295 Minn. 299, 204 N. W. 2d 197 (1973); *Commonwealth* v. *Jackson,* 454 Pa. 429, 312 A. 2d 13 (1973). The highest courts of other States have held that their criminal abortion laws can continue to be applied to laymen following *Roe* and *Doe. E. g., People* v. *Bricker,* 389 Mich. 524, 208 N. W. 2d 172 (1973); *State* v. *Norflett,* 67 N. J. 268, 237 A. 2d 609 (1975).

a decision by a woman, with the advice of her physician, to terminate her pregnancy during the first trimester because neither its interest in maternal health nor its interest in the potential life of the fetus is sufficiently great at that stage. But the insufficiency of the State's interest in maternal health is predicated upon the first trimester abortion's being as safe for the woman as normal childbirth at term, and that predicate holds true only if the abortion is performed by medically competent personnel under conditions insuring maximum safety for the woman. See 410 U. S., at 149–150, 163; cf. statement of DOUGLAS, J., in *Cheaney* v. *Indiana,* 410 U. S. 991 (1973), denying certiorari in 259 Ind. 138, 285 N. E. 2d 265 (1972). Even during the first trimester of pregnancy, therefore, prosecutions for abortions conducted by nonphysicians infringe upon no realm of personal privacy secured by the Constitution against state interference. And after the first trimester the ever-increasing state interest in maternal health provides additional justification for such prosecutions.

As far as this Court and the Federal Constitution are concerned, Connecticut's statute remains fully effective against performance of abortions by nonphysicians. We express no view, of course, as to whether the same is now true under Connecticut law. Accordingly, the petition for certiorari is granted, the judgment of the Supreme Court of Connecticut is vacated, and the case is remanded to that court for its further consideration in light of this opinion.

*So ordered.*

MR. JUSTICE WHITE concurs in the result.