VIVIAN RHIM *v.* STATE OF INDIANA.

[No. 676S189. Filed June 18, 1976.]

*Robert G. Mann,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Henry O. Sitler,* Deputy Attorney General, for appellee.

DeBRULER, J.—Appellant, Vivian Rhim, was charged by indictment with attempting to procure a miscarriage, Ind. Code § 35-1-58-1, Burns § 10-105 (1975). On April 10, 1970, in a trial before Judge Saul I. Rabb, she was convicted as an accessory to the crime of attempting to procure a miscarriage, pursuant to Ind. Code § 35-1-29-1, Burns § 9-102 (1975). On May 8, 1970, she was sentenced to a term of three to fourteen years and $100.00 and costs. On that same day, in order to have bond set, appellant's attorney filed a handwritten motion to correct errors.

On July 6, 1970, appellant consulted her attorney, who informed her he was not proceeding with her appeal. He did file a praecipe on July 14, 1970. On July 15, 1970, she discharged him. She hired a second attorney. He filed a belated motion to correct errors on August 21, 1970; it was overruled the same day. Then, this second attorney, without the knowledge of his client, hired a third attorney. He filed a petition for a belated appeal on May 5, 1971: Ind. R. P.C. 2(B). On August 22, 1973, this Court denied the petition for a belated appeal. On September 5, 1973, a fourth attorney filed a petition for post conviction relief, and, on September 20, 1973, an amended petition for a belated appeal. On January 22, 1974, this Court granted appellant's petition for permission to file a belated appeal.

On appeal to the Court of Appeals, appellant raised two issues: (1) whether Indiana's abortion statute, Ind. Code § 35-1-58-1,[1] is unconstitutional, because the United States

---

1. "Whoever prescribes or administers to any pregnant woman, or to any woman whom he supposes to be pregnant, any drug, medicine or substance whatever, with intent thereby to procure the miscarriage of such woman, or with like intent, uses or suggests, directs or advises the use of any instrument or means whatever, unless such miscarriage is necessary to preserve her life, shall, on conviction, if the woman miscarries, or dies in consequence thereof, be fined not less than one hundred dollars nor more than one thousand dollars, and be imprisoned in the state prison not less than three years nor more than fourteen years."

Supreme Court, in *Roe* v. *Wade*, (1973) 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, held that a similar statute unconstitutionally restricted a mother's right to an abortion, and (2) whether there was sufficient evidence of probative value to support the judgment of the trial court. The Court of Appeals affirmed her conviction. *Rhim* v. *State*, (1975) Ind. App., 337 N.E.2d 560 (Sullivan, P.J., dissenting). Appellant filed a petition to transfer, which we grant.

In the Court of Appeals, Second District, the majority found that appellant had waived the constitutional issue by failing to make a sufficiently specific argument on the issue in her belated motion to correct errors, as required by Ind. R. Tr. P. 59(B) and (G). Appellant's motion to correct errors reads:

"4. That the alleged offense is unconstitutional and repugnant to the rights of citizens imposing state strictures in areas of non-government responsibility."

The Memorandum accompanying the motion reads:

"Also, for the sake of saving any related arguments the defendant would state that the right of the government to make and impose criminal sanctions in the entire area of seeking or performing any act to terminate pregnancy is unconstitutional. A proper exercise of the legislature to insure the health, safety, and welfare of citizens might well be to regulate this medical procedure (which existing laws cover) or to place certain prerequisites on both the person seeking and the person performing the act. However, the statute presented, on its face, is an unconstitutional invasion into the private affairs of citizens; and is duplications (sic) in that the alleged act complained of is properly covered by the statutes relating to the unlawful practice of medicine, and assault and battery."

The Court of Appeals noted two deficiencies in this statement:

"Rhim's Belated Motion To Correct Errors fails in two respects. First, Rhim does not indicate what specific constitutional provision is violated by the Abortion Statute.

Secondly, she fails to accompany her constitutional claim with a statement of *facts and grounds* upon which her claim is based. Her assertion that the Abortion Statute 'on its face, is an unconstitutional invasion into the private affairs

of citizens,' is not supported by a statement as to *how* or *why* this Statute invades either the 'private affairs of citizens' or her own 'private affairs.'" 337 N.E.2d at 563.

While appellant's statements in the belated motion to correct errors are deficient, they are not so deficient as to constitute a waiver of the right to raise the constitutionality of the statute under which she was convicted.

We, therefore, consider the issue of standing. This Court has previously determined that a non-physician convicted of having attempted to perform an abortion has standing to raise the issue of the constitutionality of the abortion statute. *Cheaney* v. *State*, (1972) 259 Ind. 138, 285 N.E.2d 265. In that case, we noted that the United States Supreme Court had recognized the standing of the directors of a planned parenthood league, who were convicted as accessories to the crime of using contraceptives. "Certainly the accessory should have standing to assert that the offense which he is charged with assisting is not, or cannot constitutionally be, a crime." *Griswold* v. *Connecticut*, (1965) 381 U.S. 479, 481, 85 S.Ct. 1678, 14 L.Ed.2d 510. Appellant, therefore, has standing.

Our statute, Ind. Code § 35-1-58-1, defines as guilty "whoever" attempts to procure a miscarriage. Must we find this statute unconstitutional, and therefore, null and void, because of the United States Supreme Court's holding in *Roe* v. *Wade, supra?*

Based on its reading of *Roe,* the Connecticut Supreme Court determined that Connecticut's similar statute was a nullity, and the court overturned a 1971 conviction of a non-physician abortionist. The United States Supreme Court vacated that judgment and remanded. *Connecticut* v. *Menillo,* (1975) 423 U.S. 9, 96 S.Ct. 170. The Court explained that the opinion in *Roe,* which noted that the Texas abortion statutes must fall "as a unit," meant only that the statutes could not be enforced:

"in contravention of a woman's right to a clinical abortion by medically competent personnel. We did not hold the

Texas statutes unenforceable against a nonphysician abortionist, for the case did not present the issue.

Moreover, the rationale of our decision supports continued enforceability of criminal abortion statutes against nonphysicians. *Roe* teaches that a State cannot restrict a decision by a woman, with the advice of her physician, to terminate her pregnancy during the first trimester because neither its interest in maternal health nor its interest in the potential life of the fetus is sufficiently great at that stage. But the insufficiency of the State's interest in maternal health is predicated upon the first trimester abortion being as safe for the woman as normal childbirth at term, and that predicate holds true only if the abortion is performed by medically competent personnel under conditions insuring maximum safety for the woman. See 410 U.S., at 149-150, 163, 93 S.Ct. at 724-725, 731; cf. *Cheaney* v. *Indiana,* 410 U.S. 991, 93 S.Ct. 1516, 36 L.Ed.2d 189 (1973), denying cert. to 259 Ind. 138, 285 N.E.2d 265 (1972). Even during the first trimester of pregnancy, therefore, prosecutions for abortions conducted by nonphysicians infringe upon no realm of personal privacy secured by the Constitution against state interference. And after the first trimester the ever increasing state interest in maternal health provides additional justification for such prosecutions.

As far as this Court and the Federal Constitution are concerned, Connecticut's statute remains fully effective against performance of abortions by nonphysicians." 96 S.Ct. at 171.

It is clear, then, that *Roe* did not render the Indiana statute unconstitutional as applied to appellant.

The statute concerning non-physicians has not been changed. The Indiana Legislature did not repeal Ind. Code § 35-1-58-1, when it passed statutes regulating abortions performed by physicians. Ind. Code § 35-1-58.5-1 *et seq.* Therefore, Ind. Code § 35-1-58-1 may be applied to appellant.

Appellant's second argument is that there was not sufficient evidence of probative value to prove beyond a reasonable doubt that she aided in attempting to procure a miscarriage. The elements of Ind. Code § 35-1-58-1, are: (1) that someone used an instrument or a drug (2) on a pregnant woman or a

woman whom the person supposed to be pregnant (3) with the intent thereby to procure a miscarriage, (4) when the woman did not need a miscarriage to preserve her life, and (5) that the woman did miscarry or die. In this case, the State had to show also that (6) appellant aided the principal.

The record shows that "Anna Meadows inserted a clamp in [the woman's] body, and scraped out [her] uterus, to cause the fetus to dislodge." The woman testified that she was between two and three months pregnant and had seen a doctor in Bloomington. The woman testified that she was in good health at the time and that she did not have a child after this operation. She also testified that appellant held a lamp, at one time, and talked to the woman who had accompanied the pregnant woman during the rest of the time. Before the meeting at the motel, she had talked to appellant. She paid Meadows two hundred dollars.

The pregnant woman's friend testified that appellant was the woman present at the time of the abortion. She said that she learned appellant's name from a man she worked for, received her phone number, and telephoned her several weeks before the meeting. On those two occasions, she called appellant's number, asked for Vivian Rhim, and a woman came to the phone and identified herself as Vivian Rhim. The friend and the person on the phone made all the arrangements to go to the motel. At the motel, at Meadows' request, appellant tilted the light hanging from the ceiling toward the bed where the pregnant woman lay.

The record shows evidence of probative value on each of the elements of an attempt to procure a miscarriage. The trier of fact did not err in finding appellant guilty.

We affirm the conviction of the appellant.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 348 N.E.2d 620.