363 A.2d 215.

THE CONSTITUTIONAL RIGHT TO LIFE COMMITTEE *et al. vs.* JOSEPH E. CANNON, *Director of Health et al.*

AUGUST 18, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This declaratory judgment action was heard by a justice of the Superior Court. One of the plain-

tiffs,[1] The Constitutional Right to Life Committee, is a nonbusiness corporation organized under the laws of Rhode Island. Two of its corporate goals are to resist "all attempts at liberalizing the existing abortion law" and to develop "a community education program on abortion and its adverse effects on society." The gist of the plaintiffs' complaint is that certain regulations promulgated by the Department of Health under the pertinent provisions of the Administrative Procedures Act, G. L. 1956 (1969 Reenactment) ch. 35 of title 42, are void. The trial justice ruled to the contrary, and the plaintiffs have appealed.

The regulations in dispute specify the facilities, procedures, and personnel required whenever a pregnancy is terminated within the geographical boundaries of Rhode Island. The department, at the request of the Governor, first filed a set of emergency regulations with the Secretary of State on June 13, 1973, and on October 4, he extended the emergency regulations for an additional 90-day period. The authority for the emergency regulations and the 90-day extension can be found in §42-35-3(b).

On October 5, 1973, the department, acting pursuant to the terms of §42-35-3(a)(1), held a public hearing at which divergent views were expressed as to the proposed rules then being considered by the department. The plain-

---

[1]The other plaintiffs in this proceeding consist of two groups of individuals. One group is made up of four married couples who wish to adopt infants. They point to the reduced supply of available adoptable babies and complain that the implementation of the department's regulations will further reduce this supply. The second group is composed of six husbands whose wives were pregnant at the time of the filing of the declaratory action. They wish to know if their consent would be required in the event their spouses sought to terminate their pregnancies. When the appeal came on for argument, the defendant sought to have the appeal dismissed because none of the appellants had the requisite standing. At this late stage, we shall assume that the committee, the parents wishing to adopt, and the concerned husbands all have the necessary standing.

tiffs appeared at the hearing and presented evidence to support their view that the department was adopting regulations that were detrimental to the public health. Thereafter, on December 27, 1973, the department adopted a permanent set of termination regulations and filed them, pursuant to §42-35-4, with the Secretary of State.

Once it became known that the department was to issue permanent regulations, the committee's attorney, as was his right under §42-35-3(a)(2), wrote to the department's director asking him to explain why the regulations were adopted in light of the evidence presented at the October hearing which supported the committee's position that life begins at the moment of conception. The director, in his response of December 27, wrote: "We have concluded, with advice of counsel, that the Supreme Court ruling, and subsequent court action, precludes our consideration of this issue, until or unless it is further clarified in some manner." Thereafter, plaintiffs instituted this action.

At a jury-waived trial in the Superior Court, several physicians who specialize in obstetrics and gynecology appeared in behalf of plaintiffs. Their uncontradicted testimony was that from the moment of fertilization a new life begins to grow and develop. The medical specialists also agreed that abortion carries with it a potential for deleterious physical and psychological consequences for the mother and other children born subsequent to a termination. The plaintiffs' evidence also indicated that legalized abortion, instead of eliminating the procurement of illegal abortions, would lead to an increase of incidents of clandestine procedures and that an abortion, even when it is performed by a skilled physician, carries with it a threat to the woman's safety. The defendants offered no evidence to rebut the testimony presented by the experts. Subsequently, the trial justice filed a written decision in

which he found that the department's rules and regulations were valid. Thereafter, a judgment was entered, and this appeal followed.

General Laws 1956 (1968 Reenactment) §23-1-1 specifies in pertinent part that the Department of Health, in promulgating its rules, "* * * shall take cognizance of the interests of life and health among the peoples of the state * * *." The plaintiffs' appeal rests on their contention that, when the director conceded his department did not consider the life of the unborn when it promulgated its permanent rules, the termination document was a nullity because the department had ignored the statutory command that it keep in mind the people's life and health whenever exercising its rule-making power.

While we are dealing with a question of statutory construction, our conclusion is controlled by the holdings in *Doe* v. *Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed. 2d 201 (1973), and *Roe* v. *Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). In both cases, the Supreme Court held that included within the constitutional right to privacy is a woman's decision to terminate her pregnancy before it has run its course. The Court, however, recognized that this right is not absolute. At some point during the gestation period the woman's right to privacy must yield to compelling state interests in the preservation of maternal health or fetal life. To accommodate the conflicting interests, the Court separated the gestation period into distinct trimesters where, in each period, an accommodation must be made between certain private and public interests. The chronological approach taken by the Court was aptly summarized by Mr. Justice Blackman in *Roe* v. *Wade* at 164-65, 93 S.Ct. at 732, 35 L.Ed.2d at 183-84:

"(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

"(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

"(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother."

Thus, as a matter of federal constitutional law, the only interest which the state may assert in the abortion procedure prior to the time of the child's viability is during the second trimester when the state "* * * may regulate the abortion procedure to the extent that the regulation reasonably relates to the preservation and protection of maternal health." *Roe v. Wade, supra* at 163, 93 S.Ct. at 732, 35 L.Ed.2d at 182. But even regulation at this point must be carefully restricted so as not to unduly interfere with the woman's assertion of the constitutional right to terminate her pregnancy. *Doe* v. *Bolton, supra.*

The limited interest of the state prior to viability does not mean, however, that the state must sit idly by while abortions are performed regardless of the safety of the procedures employed. As previously noted, the Supreme Court of the United States has held that the state does have an interest in insuring maternal health during the second trimester and may take reasonable means to effectuate that end. Even within the first trimester, the Court has stated that regulation may be necessary to provide

women with suitable medical treatment. In *Connecticut v. Menillo,* 423 U.S. 9, 10-11, 96 S.Ct. 170, 171, 46 L.Ed.2d 152, 154-55 (1975), the Court observed in upholding a statute requiring abortions to be performed by licensed physicians:

> "*Roe* teaches that a State cannot restrict a decision by a woman, with the advice of her physician, to terminate her pregnancy during the first trimester because neither its interest in maternal health nor its interest in the potential life of the fetus is sufficiently great at that stage. But the insufficiency of the State's interest in maternal health is predicated upon the first trimester abortion being as safe for the woman as normal childbirth at term, and that predicate holds true only if the abortion is performed by medically competent personnel under conditions insuring maximum safety for the woman."

The Supreme Court recently affirmed this principle in *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) by upholding a state statute requiring the aborting woman to sign a written consent form and medical personnel to maintain certain records. The Court deemed these regulations appropriate to maximize proper medical care.[2] While we are not asked in this appeal to test the department's rules against the constitutional standards set forth in *Roe v. Wade, supra,* and subsequent cases, *Menillo* and *Danforth* demonstrate that a degree of state regulation is permissible within the purview of *Roe.*

The plaintiffs place great emphasis on the trial justice's finding that life begins at conception. With life thus defined, they maintain that the department, in order to obey the legislative mandate that it consider the people's life and health, was required to take into consideration

---

[2]The Supreme Court in the *Danforth* case struck down other portions of the state statute which called for the consent of the husband or a parent before an abortion could be performed.

fetal life during the formulation of its regulations. If the department had taken cognizance of all life as it was required to do, plaintiffs claim that abortion regulations should not have been issued.

There is no disagreement that the evidence presented to the trial court conclusively established that human life commences from the moment of conception. However, reaching this conclusion does not resolve the issues presented by plaintiffs. While we may accept a particular view on the beginning of life, the thrust of the Supreme Court's rulings in *Doe* and *Roe* is that even if the evidence is conclusive that life does begin at the moment of conception, a woman during the first two trimesters of her pregnancy has an overriding constitutional right to terminate the pregnancy without being called upon by the state to account for her actions. In *Roe* v. *Wade, supra,* the abortion statute under attack provided that life begins at conception and, therefore, the state had a legitimate interest in protecting that life. The Supreme Court rejected this argument by stating: "[W]e do not agree that, by adopting one theory of life, [the state] may override the rights of the pregnant woman that are at stake." 410 U.S. at 162, 93 S.Ct. at 731, 35 L.Ed.2d at 182. Consequently, regardless of how we choose to treat the unborn child, as a matter of federal constitutional law a pregnant woman has a right to terminate her pregnancy any time prior to the time the fetus becomes viable.

We agree with plaintiffs that §23-1-1 mandates the Department of Health to consider "life and health" in promulgating regulations. However, in regard to the life of the unborn child, it is clear that the department could not take notice of the unborn's interests prior to the time of viability, regardless of how life is defined, by either proscribing abortions or limiting the availability of obtaining one. To do so would be in direct violation of the

mandates set forth in *Roe* v. *Wade* and *Doe* v. *Bolton,* both *supra*. We also fail to see how the department can be in violation of §23-1-1 by simply adopting regulations that neither promote, endorse, nor encourage the procurement of abortions. The department is regulating a medical procedure and not dictating a policy supportive of abortion. That women can terminate their pregnancies without state interference is the only *fact* that the Department of Health was required to deal with because it is the only *fact* that the department has any semblance of control over. The Supreme Court has taken the question of whether to abort or not out of the state's hands during the first two stages of pregnancy, leaving to the state the sole task of insuring that procedures for terminating a pregnancy are medically safe for the woman.

In conclusion, we would point out that the department's regulations adhere to the strictures laid down in both *Doe* and *Roe*. Without the regulations, abortions could be performed with no assurance that any effort was being made to protect the physical and emotional wellbeing of the mother. As noted before, the medical evidence presented in the trial court indicates that the termination process does involve some risk. This being so, we believe that the state has a duty, since it cannot bar this procedure, to alleviate its inherent potential harm by taking whatever precautions may be necessary to insure that only skilled physicians operating in medically acceptable conditions terminate a pregnancy. The Department of Health made such an attempt when it issued its termination regulations. For this reason the trial justice found the regulations to be in the interests of the public health, and we concur with this assessment.

The plaintiffs' appeal[a] is denied and dismissed, and the judgment appealed from is affirmed.

Motion to reargue denied.

*Moore, Virgadamo, Boyle & Lynch, Ltd., Francis J. Boyle, Joseph R. Palumbo, Jr.,* for plaintiffs.

*Julius C. Michaelson,* Attorney General, *R. Daniel Prentiss,* Special Assistant Attorney General, for defendants.

---

[a]This appeal was argued before this court when it met in special session on May 3, 1976, in the city of Newport at the Colony House to observe Law Day 1976 and our nation's Bicentennial. The presentation made by counsel was in keeping with the high degree of excellence that marked the day's festivities.