816 F.2d 682
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Malochi SMITH, Plaintiff-Appellant,
v.
INTERNATIONAL UNION OF UNITED RUBBER, CORK, LINOLEUM AND
PLASTIC WORKERS OF AMERICA, and Local 186,
Defendants-Appellees.
 No. 85-5567.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1987.
 
 Before KEITH, Circuit Judge, and WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Malochi Smith, appeals from a summary judgment order of the district court in which the court held that the defendant Union did not unfairly represent the plaintiff. Plaintiff also appeals from a summary judgment order wherein the district court dismissed plaintiff's pendent state claim of outrageous conduct.
 
 I.
 
 2
 Appellant has worked at Firestone Tire & Rubber Company as a miscellaneous sales worker since August 11, 1974. In January of 1977, appellant went to see a physician because he was feeling pain in his wrist as a result of picking up an object at work. The physician diagnosed tendonitis and appellant returned to work. On July 11, 1977, appellant was injured again. Appellant stayed home from work because of his injury. Firestone terminated the appellant on August 19, 1977, for "excessive and unwarranted absenteeism."
 
 
 3
 Appellant being unhappy with Firestone's action, discussed his situation with the Union. The Union filed a grievance against Firestone on August 31, 1977. Subsequently, appellant filed suit in state court for worker's compensation benefits from the Firestone insurance carrier and for supplemental worker's compensation benefits from Firestone Tire & Rubber Company for the time he was required to be off work for his injury. An award of benefits was granted on May 10, 1978. Smith v. Travelers Ins. Co., No. 61100 (Tenn. Ch. App. May 10, 1973). The decision was later affirmed by the Tennessee Supreme Court. The Union had watched the worker's compensation case closely by having the president and secretary of the Union present at the proceedings with the secretary taking notes.
 
 
 4
 An arbitration hearing was held and the arbitrator entered his opinion and award on July 24, 1980. The arbitrator found that the Tennessee Supreme Court decision disposed of all the issues and that the appellant was discharged without just cause. The arbitrator, therefore, sustained appellant's grievance and, pursuant to the provisions of Article III, Section 3(a) of the Labor Agreement, ordered appellant reinstated.
 
 
 5
 Although appellant was reinstated he was laid off four days later because of his low seniority. Appellant objected to this action and asked the Union to file charges with the National Labor Relations Board (NLRB). On August 13, 1980, the Union filed a charge with the NLRB claiming that Firestone made unilateral changes in the bargaining agreement by refusing to abide by the arbitration decision. The acting director of the NLRB informed the Union that he did not have authority to enforce arbitration awards. He further noted that Firestone had laid off approximately 400 employees with more seniority than appellant and therefore based on the collective bargaining agreement, appellant could not be reinstated. Also, the NLRB found that appellant was assured of getting his back pay as soon as it was computed.
 
 
 6
 In the interim period, the Union and the Company were disputing over the amount of back pay that should be awarded appellant. On August 11, 1980, a meeting was held between appellant and the Company officials to discuss his back pay. Appellant was told that more information was needed to compute his back pay. On August 18, 1980, Mr. Polovich, manager of labor relations, wrote a letter to the president of the local union, Mr. Sennett. In this letter, Polovich requested Information to substantiate that appellant had no earnings during his termination and a list of employers he sought employment with.
 
 
 7
 Sennett responded by a letter dated August 19, 1980, in which he stated that no information was needed to comply with the arbitrator's decision because the arbitrator did not state that appellant's reward should be reduced by the amount he received from other employment. Another meeting was held on September 4, 1980, which was attended by appellant, Polovich and Sennett. Sennett requested that a partial payment of the award be paid to the appellant because he needed money for bills. On September 5, 1980, appellant received a partial payment of $1,098.08.
 
 
 8
 On November 3, 1980, appellant's attorney contacted Sennett and Polovich by letter advising them that he had been retained by appellant to represent him in the dispute concerning the arbitration award. Appellant's attorney received no notice from these two men and therefore wrote them again on November 26, 1980, stating that suit would be filed against both the Union and the Company if appellant did not receive his back pay. On January 12, 1981, a meeting was held with the appellant, Sennett and Polovich present. The Company offered appellant $13,000 but he refused the offer stating that he would go to court.
 
 
 9
 On January 27, 1981, appellant's attorney filed the instant action against the Union and the Company. The lawsuit was filed pursuant to 29 U.S.C. Sec.Sec. 141 and 185 and 28 U.S.C. Sec.Sec. 2201, 2202 and 1331. Appellant's allegations included outrageous conduct on the part of all defendants, unfair representation on the part of the Union, ,and retaliatory layoff and failure to pay the back pay award on the part of the Company. On February 23, 1981, the Union filed a cross-claim against Firestone seeking to enjoin them from refusing to abide by the arbitrator's decision.
 
 
 10
 These motions were referred by the district court to the U. S. Magistrate. The U.S. Magistrate disposed of the motions and recommended on April 29, 1981, that the entire matter be remanded to the arbitrator for a determination of the specific amount of back pay. The court adopted the Magistrate's report on June 3, 1981.
 
 
 11
 The arbitrator made his final decision on July 15, 1981, awarding appellant $19,960.77. This figure took into consideration appellant's failure to mitigate his damages by looking for employment while he was laid off. Subsequently, Firestone and the Union both filed motions to dismiss with the district court. On September 3, 1982, all claims against Firestone were dismissed and all claims against the Union were dismissed except the breach of the duty of fair representation. Pursuant to an agreement between the Union and the appellant, they both submitted cross-motions for summary judgment on the issue of the duty of fair representation. On March 26, 1985, the district court granted the Union's motion for summary judgment and dismissed appellant's lawsuit against the Union an April 4, 1985. Appellant then filed this timely appeal.
 
 II.
 
 12
 The appellant is no longer being represented by his attorney and has therefore filed his brief pro se. The appellee states in his brief that it is difficult to discern what appellant's arguments are. We are in agreement with the appellee and believe that the relevant arguments properly raised are those concerning unfair representation and outrageous conduct.
 
 
 13
 It does appear that appellant is also arguing that his attorney committed malpractice and both defendants are liable for negligence and conspiracy. This is not the correct forum to resolve these issues. It is clear that this court generally declines to review arguments not presented to the district court in the first instance. Sigmon Fuel Co. v. Tennessee Valley Authority, 754 F.2d 162, 164-165 (1985) These issues were not raised before the district court and therefore should not be addressed on appeal.
 
 
 14
 Appellant's claims of unfair representation and outrageous conduct were both decided by summary judgment motions. summary judgment may be granted only if there is no genuine issue with respect to any material fact of the case. County of Oakland v. City of Berkley, 742 F.2d 289, 297 (6th Cir. 1984). In ruling on a motion for summary judgment, the court must construe the evidence in the Light most favorable to the party opposing the motion. Adams v. Union Carbide Corp., 737 F.2d 1453 (6th Cir.), cert. denied, 469 U.S. 1062 (1984). In the instant case, appellant does not dispute any of the relevant facts. Therefore, this court need only review whether the district court correctly applied the substantive rules of law in concluding that the defendants were entitled to judgment as a matter of law.
 
 
 15
 The basis for appellant's claim of unfair representation is that the Union waited an excessively long time to take the case to arbitration. Furthermore, appellant alleges that between the first arbitration and the second arbitration the Union did not represent him fairly. A breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. Vaca v. Sipes, 386 U.S. 171, 190 (1967). The Sixth Circuit has adopted a test with three separate and distinct obligations to determine whether a union has unfairly represented one of its members.
 
 
 16
 First [the union] must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.
 
 
 17
 Ruzicka v. General Motors Corporation, 523 F.2d 306, 310 (6th Cir. 1975).
 
 
 18
 We believe that the Union did not breach its duty of fair representation. There is no evidence to show that any of the three obligations have been violated. The findings of the district court state that appellant's case took over three years to -et into arbitration and the record shows that other cases took approximately the same amount of time. Also, it appears that the Union properly waited for the worker's compensation case to be decided in state court. This is evidenced by the fact that the arbitrator used the Tennessee Supreme Court's decision holding that appellant was wrongfully discharged as dispositive on the issue. Furthermore, the district court found that between the first arbitration hearing and the second hearing, there was an honest dispute between the Union and the company on the amount of back pay. Lastly, as is stated in the appellee's brief, the appellant was made whole when he received his back pay in accordance with the final arbitrator's decision. We believe that the district court acted properly when it granted the appellee's motion for summary judgment on the issue of unfair representation.
 
 
 19
 Appellant's claim of outrageous conduct against the Union and the Company is also groundless. The appellant alleges outrageous conduct but does not point the court to anything other than the length of time it took for appellant to get his back pay. Although we believe this claim is groundless, the district court never reached this Point because it dismissed the claim on pendent jurisdiction grounds.
 
 
 20
 The granting of pendent jurisdiction is recognized as a doctrine of discretion, not of plaintiff's right. The reason for pendent jurisdiction are the considerations of judicial economy, convenience and fairness to the litigants. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). The district court, noting the Gibbs decision, determined that it was inappropriate to exercise pendent jurisdiction because it had already dismissed the Company from the case. The court also declined to exercise jurisdiction because it was not sure if appellant had exhausted his administrative remedies.
 
 
 21
 The former ground is surely sufficient to support the dismissal of the outrageous conduct claim. Under Gibbs, it is generally recognized that a district court should not exercise pendent jurisdiction when the federal claim to which the state claim is appended has been dismissed. In fact, the Second Circuit has stated that "the retention of jurisdiction for trial of a pendent state law claim on the basis of a federal question claim already disposed of... would be an abuse of discretion absent unusual circumstances." Nolan v. Meyer, 520 F.2d 1276, 1280 (2nd Cir.), cert. denied, 423 U.S. 10 (1975). While this court has not found it necessary to adopt such a concrete rule,it is nonetheless apparent that the granting of pendent jurisdiction is within the discretion of the court and the district court below clearly did not abuse its discretion. Therefore, the dismissal of the outrageous conduct claim will be upheld.
 
 
 22
 We accordingly affirm the judgment of the district court.