**WOMEN'S HEALTH CENTER OF WEST COUNTY, INC.,** Women's Health Center of Cape Girardeau, Inc., Women's Health Center of St. Peter's Inc., Bolivar M. Escobedo, M.D., On behalf of themselves, other medical care providers similarly situated and their patients and clients, and C.J.E., On behalf of pregnant women similarly situated, Appellants,

v.

**William L. WEBSTER, State of Missouri, George "Buzz" R. Westfall, Appellees.**

No. 88–1663.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1988.

Decided March 31, 1989.

Robertson's oral contract theory, as this theory can only support the award of actual damages.

Lisa Toarmina, Clayton, Mo., for appellants.

Jerry L. Short, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before McMILLIAN and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

BOWMAN, Circuit Judge.

This case involves plaintiffs' constitutional challenges to four sections of the Missouri statute governing abortions.[1] The

---

**1.** Another panel of this Court recently affirmed in part a district court decision that several other sections of the Missouri statute are unconstitutional. See *Reproductive Health Service v. Webster,* 851 F.2d 1071 (8th Cir.1988), holding that the following provisions of the Missouri statute violate the constitution: § 188.025 (requiring hospitalization for abortions performed at or later than sixteen weeks gestational age); § 188.029 (requiring doctor to determine whether fetus is viable before performing abortion on any woman whom doctor believes is at least 20 weeks pregnant); § 1.205 (stating that life begins at conception). That decision further held unconstitutional those portions of §§ 188.205, 188.210, and 188.215 that prohibit use of public facilities, employees, or funds to encourage or counsel abortions, that prohibit use of public facilities for performing abortions, and that prohibit public employees from performing or assisting abortions. The decision upheld

four challenged sections are Mo.Rev.Stat. § 188.080, requiring that physicians performing abortions maintain surgical privileges at a hospital providing obstetrical and gynecological care; § 188.010, stating the Missouri legislature's intention to regulate abortion to the extent permitted by the federal constitution; and §§ 188.105 and 188.110.1, prohibiting discrimination against persons who refuse to participate in abortions.[2] Plaintiffs appeal from the District Court's[3] final judgment rejecting their claims.[4]

Plaintiff Bolivar M. Escobedo, M.D., is a physician licensed in the state of Missouri.

His practice is limited to obstetrics and gynecology and he specializes in performing abortions. Dr. Escobedo was born in Lima, Peru and received his medical education in that country. He completed his internship and residency in North American hospitals. Dr. Escobedo maintains surgical privileges in Peruvian hospitals, but does not currently have staff privileges at any hospital in the United States.

Plaintiffs Women's Health Center of West County, Inc., Women's Health Center of Cape Girardeau, Inc., and Women's Health Center of St. Peters, Inc. are Mis-

---

§ 188.205's ban on the expenditure of public funds for abortions not necessary to save the life of the mother. On January 9, 1989, the Supreme Court noted probable jurisdiction of the state's appeal in *Reproductive Health Service.* —— U.S. ——, 109 S.Ct. 780, 102 L.Ed.2d 772 (1989).

2. The full texts of the challenged sections are:
188.010. Intent of general assembly.
It is the intention of the general assembly of the state of Missouri to grant the right to life to all humans, born and unborn, and to regulate abortion to the full extent permitted by the Constitution of the United States, decisions of the United States Supreme Court, and federal statutes.
188.080. Abortion performed by other than a licensed physician with surgical privileges at a hospital, a felony.
Notwithstanding any other penalty provision in this chapter, any person who is not a licensed physician as defined in section 188.-015 who performs or attempts to perform an abortion on another as defined in subdivision (1) of section 188.015, is guilty of a class B felony, and, upon conviction, shall be punished as provided by law. Any physician performing an abortion who does not have surgical privileges at a hospital which offers obstetrical or gynecological care shall be guilty of a class B felony, and, upon conviction shall be punished as provided by law.
188.105. Discrimination by employer prohibited because of failure of employee to participate in abortion—exceptions.
1. It shall be unlawful:
(1) For an employer:
(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's refusal to participate in abortion;
(b) To limit, segregate, or classify his, her, or its employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment op-

portunities or otherwise adversely affect his or her status as an employee, because of such individual's refusal to participate in abortion;
(c) To discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden under sections 188.100 to 188.120 or because he or she has filed a complaint, testified, or assisted in any legal proceeding under sections 188.100 to 188.120.
(2) For any person, whether an employer or employee, or not, to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under sections 188.100 to 188.120, or to attempt to do so.
2. Notwithstanding any other provisions of sections 188.100 to 188.120, the acts proscribed in subsection 1 of this section shall not be unlawful if there can be demonstrated an inability to reasonably accommodate an individual's refusal to participate in abortion without undue hardship on the conduct of that particular business or enterprise, or in those certain instances where participation in abortion is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise.
(3) Nothing contained in sections 188.100 to 188.120 shall be interpreted to require any employer to grant preferential treatment to any individual because of such individual's refusal to participate in abortion.
188.110. Discrimination by colleges, universities and hospitals prohibited—no requirement to pay fees, when
1. No public or private college, university or hospital shall discriminate against any person for refusal to participate in abortion.

3. The Honorable George F. Gunn, United States District Judge for the Eastern District of Missouri.

4. Plaintiffs also appeal the District Court's refusal to certify the case as a class action, an issue which necessitates only brief consideration. *See infra* part III.

souri corporations owned and operated by Dr. Escobedo. Prior to the enactment of the statute that plaintiffs challenge here, Dr. Escobedo routinely performed abortions at those clinics.[5]

Plaintiff C.J.E. is an employee of one of Dr. Escobedo's clinics, where she counsels patients and assists with pre- and post-operative care. At the time the suit was filed, C.J.E. was approximately six weeks pregnant and had expressed her desire to have an abortion by Dr. Escobedo.[6]

Plaintiffs brought suit in the District Court against the state of Missouri, the state attorney general, and the prosecuting attorney for the County of St. Louis, seeking a declaration that the challenged sections of the Missouri statute are unconstitutional and an injunction preventing the enforcement of those sections. The District Court denied plaintiffs' motion for a temporary restraining order, and later granted defendants' motion for summary judgment on plaintiffs' challenges to §§ 188.010, 188.105 and 188.110.1, holding that § 188.010 is not subject to constitutional attack because it has no substantive effect and that no plaintiff has standing to challenge §§ 188.105 and 188.110.1. 670 F.Supp. 845. After a hearing, the Court issued an opinion declaring § 188.080 constitutional and entered a final judgment for defendants. 681 F.Supp. 1385. This appeal has followed. We affirm.

## I.

As in the District Court, plaintiffs here contend that § 188.080 violates their right to privacy, the equal protection clause, and the due process clause. They also contend that the section is void for vagueness. We consider first the privacy claim, and then each of the other claims in turn.

## A.

Since the Supreme Court first announced in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), that the Constitution protects abortion from much, but not all, state regulation, the Court on several occasions has been faced with the task of determining the constitutionally permissible extent of state regulatory power in this field. Generally, the Court has required that if a state law impinging on abortion is to be held valid, it must further a compelling state interest—a strict scrutiny test. *See, e.g., Akron v. Akron Center for Reproductive Health, Inc.,* 462 U.S. 416, 427, 103 S.Ct. 2481, 2491, 76 L.Ed.2d 687 (1983). Application of the strict scrutiny standard, however, is triggered only when the state law places "sufficiently substantial and not de minimis" restrictions on abortion. *Charles v. Carey,* 627 F.2d 772, 777 (7th Cir.1980). As the Supreme Court explained in *Akron,* a state may enact "[c]ertain regulations that have no significant impact on the woman's exercise of her right ... where justified by important state health objectives." *Akron,* 462 U.S. at 430, 103 S.Ct. at 2492. *See also Carey v. Population Serv. Int'l,* 431 U.S. 678, 688, 97 S.Ct. 2010, 2017, 52 L.Ed.2d 675 (1977) (state exceeds its authority to regulate abortion when, without a compelling state interest, it "substantially limit[s] access to the means of effectuating [the abortion] decision.")

Plaintiffs argue that § 188.080 has a significant impact because it limits a patient's potential choices and interferes with the doctor-patient relationship. We disagree. Although the record establishes that some women sought to have abortions by Dr. Escobedo, it does not show that his present inability to perform abortions in Missouri has prevented any woman from effectuating her decision to obtain an abortion.[7] On

---

5. Dr. Escobedo testified that he has performed over 50,000 abortions.

6. C.J.E. testified that because she had had three previous abortions by Dr. Escobedo, she wanted him to perform the abortion in this instance. After the suit was filed, however, C.J.E.'s pregnancy ended in miscarriage. No question has been raised as to whether C.J.E.'s case is now

moot, and in any event the case plainly is not moot as to the other plaintiffs.

7. Dr. Escobedo apparently is the only doctor in the State of Missouri who desires to perform abortions and is prevented from doing so by reason of the statute. Because Dr. Escobedo has applications for surgical privileges pending

the contrary, there are other physicians at Dr. Escobedo's clinics who are ready and able to perform abortions in compliance with Missouri law; a woman seeking to obtain an abortion need not leave the clinic in order to effectuate her decision. We find no reason to disturb the District Court's finding that "there [was] simply no evidence that any woman seeking an abortion has been or will be hindered from obtaining an abortion by reason of the enactment of Section 188.080." *Women's Health Center of West County, Inc. v. Webster*, 681 F.Supp. 1385, 1391 (E.D.Mo. 1988).

We next consider whether § 188.080 is justified by important state health objectives. *See Akron*, 462 U.S. at 430, 103 S.Ct. at 2492; *Planned Parenthood Ass'n v. Ashcroft*, 462 U.S. 476, 487, 103 S.Ct. 2517, 2523, 76 L.Ed.2d 733 (1983). The state contends that § 188.080 furthers its legitimate health objective of ensuring that a physician who performs abortions has the ability to provide for "prompt emergency treatment or hospitalization in the event of complication" in accordance with the Standards for Obstetrics–Gynecologic Services 62–63 (6th ed.1985) published by the American College of Obstetricians and Gynecologists (ACOG). Expert testimony presented to the District Court established that abortion presents risks of complications such as shock, hemorrhaging, perforation of the uterus, infection, and adverse reaction to anesthesia. The testimony further established that it is the accepted medical practice in Missouri for physicians performing abortions to have surgical privileges at hospitals providing obstetrical or gynecological care. The District Court noted that § 188.080 ensures both that "a physician will have the authority to admit his patient into a hospital whose resources and facilities are familiar to him" and that "the patient will gain immediate access to secondary or tertiary care." *Women's Health Center*, at 1391. We agree with the District Court that § 188.080 furthers important state health objectives.

Since § 188.080 does not impose any significant burden on the abortion decision and does further important state health objectives, we hold that it does not unconstitutionally interfere with the right of privacy upon which *Roe v. Wade* is premised.

### B.

■ Plaintiffs contend that § 188.080 violates the constitutional guarantee of equal protection because it places more stringent requirements on abortions than on other surgical procedures, without a showing by the state that the section is rationally related to a legitimate state interest. We disagree.

We have no difficulty in concluding that § 188.080 rationally relates to the state's legitimate interest in ensuring that prompt backup care is available to patients who undergo abortions in outpatient clinics. Moreover, the state requires that such backup care be available to patients undergoing any outpatient surgery. *See* Mo. Rev.Stat. § 197.215.1(2) (1986) (requiring that physicians performing outpatient surgical procedures including childbirth have surgical privileges at a community hospital or that the clinic in which they work have a transfer agreement with a local hospital). The State of Missouri, in exercising its police powers to protect the well-being of its citizens, has undoubted authority to regulate the conditions under which surgical procedures are performed. Such legitimate state regulation of surgical procedures is not rendered unconstitutional because it is specifically applied to abortion. *See Planned Parenthood v. Danforth*, 428 U.S. 52, 67, 96 S.Ct. 2831, 2840, 49 L.Ed.2d 788 (1976) (requirement of written consent for abortion not unconstitutional even though not imposed on other surgical procedures). Accordingly, we hold that § 188.080 does not violate the equal protection clause of the Fourteenth Amendment.

### C.

■ Plaintiffs argue that § 188.080 violates their due process rights because its

---

at several hospitals, soon even he may no longer be barred.

requirement that physicians performing abortions have surgical privileges at a hospital offering obstetrical or gynecological care effectively delegates to hospitals "the authority to decide what doctors will be allowed to perform abortions by allowing them to decide what doctors will be given surgical privileges." Plaintiffs' Brief at 26. We reject this argument.

Plaintiffs rely on two cases involving state laws conditioning the licensing of abortion clinics on their either having transfer agreements with, or employing doctors having surgical privileges in, nearby hospitals. In *Hallmark Clinic v. North Carolina Department of Human Resources*, 380 F.Supp. 1153 (E.D.N.C.1974), *aff'd in part on other ground*, 519 F.2d 1315 (4th Cir.1975), the district court held that North Carolina could not confer on hospitals "the arbitrary power to veto the performance of abortions" by withholding transfer agreements or denying staff privileges. *Id.* at 1158. Another district court reached a similar conclusion in *Birth Control Centers, Inc. v. Reizen*, 508 F.Supp. 1366 (E.D.Mich.1981), *aff'd in part on other grounds*, 743 F.2d 352 (6th Cir.1984), holding that "[t]he power to prohibit licensure may not constitutionally be placed in the hands of hospitals." *Id.* at 1375.[8]

We find the cases relied upon by plaintiffs inapposite. Unlike those cases, this case involves state regulation of the qualifications of persons who perform abortions rather than standards for licensure of abortion clinics. Thus, this case conceptually is more in line with *Connecticut v. Menillo*, 423 U.S. 9, 96 S.Ct. 170, 46 L.Ed.2d 152 (1975), in which the Supreme Court concluded that a state may require persons performing abortions to be licensed physicians. The requirement that physicians performing abortions obtain surgical privileges, which involves the independent action of a public or private hospital, poses no more significant threat to plaintiffs' due process rights than the requirement that

those performing abortions be licensed physicians, which involves the independent action of a medical licensing board. Both requirements represent the state's legitimate effort to ensure that abortion is "as safe for the woman as normal childbirth at term ... [and] is performed by medically competent personnel under conditions insuring maximum safety for the woman." *Menillo*, 423 U.S. at 11, 96 S.Ct. at 171. We therefore hold that § 188.080 does not violate plaintiffs' due process rights by impermissibly delegating to public and private hospitals the state's authority to prescribe standards for physicians who perform abortions.

**D.**

■ Plaintiffs' final attack on § 188.080 is that the section is unconstitutionally vague. They point to the language of the section requiring that physicians performing abortions have surgical privileges at a hospital which offers obstetrical or gynecological care, but which does not specify whether those privileges must be held at a hospital within the state of Missouri. We agree with plaintiffs that this portion of the statute is not a model of precise drafting. But we also agree with the District Court, which found that "Section 188.080 is fairly susceptible to only one construction: physicians who perform abortions must maintain surgical privileges at a hospital in Missouri." *Women's Health Center*, at 1394.

*Colautti v. Franklin*, 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979), requires that we evaluate § 188.080 to determine whether, as a matter of due process, it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.' " *Id.* at 390, 99 S.Ct. at 1683 (quoting *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954)). We are satisfied that any ambiguity created by

---

**8.** The District Court distinguished *Hallmark* by noting that the Missouri requirement may be met by obtaining surgical privileges at a public hospital, whose discretion is limited by state regulation. Indeed, a physician who has been arbitrarily denied surgical privileges by a public hospital has an action for violation of his due process rights. *See Klinge v. Lutheran Charities Ass'n*, 523 F.2d 56, 61 (8th Cir.1975).

the statute did not amount to a failure to give fair notice to Dr. Escobedo. Certainly a physician of ordinary intelligence would surmise that surgical privileges at a hospital at least in the statewide area would be necessary to further the state's clear purpose of ensuring readily available secondary and tertiary care. Because the only surgical privileges maintained by Dr. Escobedo are at hospitals in a foreign country, it is unmistakably clear that the statute forbids his performance of abortions in Missouri. "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974). Moreover, this is not a statute that is so indefinite that it " 'encourages arbitrary and erratic arrests and convictions.' " *Colautti*, 439 U.S. at 390, 99 S.Ct. at 683 (quoting *Papachristou v. Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972)). We hold that plaintiffs' challenge to the statute on vagueness grounds is without merit.

## II.

Plaintiffs contend that the District Court erred in granting defendants' motion for partial summary judgment, thereby rejecting plaintiffs' challenges to three other sections of the Missouri statute. We find no error.

## A.

■ Section 188.010 states the intention of the Missouri legislature "to grant the right to life to all humans, born and unborn, and to regulate abortion to the full extent permitted by the Constitution of the United States, decisions of the United States Supreme Court, and federal statutes." Plaintiffs argue that this section impinges upon a woman's right to be counseled regarding abortion and burdens her

right to obtain an abortion. The District Court concluded that because Section 188.-010 has no substantive effect, it is not subject to constitutional attack.[9] We agree, and add a further gloss to the District Court's reasoning.

In the statutory language here under attack, we are not presented with a text in which the state of Missouri has taken a stand as to when life begins. The case therefore is distinguishable from *Reproductive Health Service v. Webster*, 851 F.2d 1071, 1075–77 (8th Cir.1988), *prob. juris. noted*, —— U.S. ——, 109 S.Ct. 780, 102 L.Ed.2d 772 (1989). In that case, a panel of this Court struck down, as violative of *Roe*, Mo.Rev.Stat. § 1.205, which stated that human life begins at conception. Section 188.010, in contrast, merely articulates the legislature's intent to regulate abortion to the full extent that the state is free to do so. Being nothing more than an expression of the state's determination to exercise its constitutional authority, the section cannot be unconstitutional, and we so hold.

## B.

■ Sections 188.105 and 188.110.1 prohibit discrimination against persons who refuse to participate in abortions. Dr. Escobedo[10] argues that these sections are unconstitutionally underinclusive because they do not prohibit discrimination against persons who participate in abortions, and therefore violate Dr. Escobedo's equal protection rights. We agree with the District Court that Dr. Escobedo lacks standing to challenge the constitutionality of these sections.

When a plaintiff's standing is at issue, the Supreme Court has articulated the relevant inquiry as "whether, assuming justiciability of the claim, the plaintiff has shown

---

**9.** Plaintiffs argue that it was inappropriate for the District Court to grant summary judgment to defendants because there existed an issue of fact as to whether this section negatively impacts the right to obtain an abortion in Missouri. However, it was plaintiffs' responsibility to come forward with specific facts demonstrating the existence of such an issue to counter defendants' summary judgment motion. *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e). Plaintiffs failed to do this.

**10.** It is conceded that none of the other named plaintiffs has standing to challenge these sections on equal protection grounds.

an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). The injury alleged must be fairly traceable to the challenged statute. *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

Dr. Escobedo apparently bases his argument for standing on the notion that he has been denied surgical privileges at Missouri hospitals because the Missouri statute does not prohibit discrimination against those who perform abortions. But in responding to defendants' summary judgment motion, he failed to direct the District Court's attention to any evidence that he has been denied surgical privileges by any hospital because he performs abortions. He therefore has failed to create a fact question on the issue of injury to himself, much less on the issue of whether the injury is fairly traceable to the challenged sections. Moreover, the relief Dr. Escobedo seeks—that these sections be struck down as unconstitutional—certainly will not directly result in any hospital granting him surgical privileges. Indeed, it is entirely speculative to assume that the existence of these sections has any effect whatsoever on the decisions of hospitals to grant or deny surgical privileges to Dr. Escobedo or anyone else, given the many factors that enter into such decisions. This distinguishes the case from *Heckler v. Mathews*, 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984), upon which plaintiffs heavily rely. In *Mathews*, the Court concluded that standing was proper because there was "no doubt about the direct causal relationship between the Government's alleged deprivation of appellee's right to equal protection and the personal injury appellee has suffered—denial of ... benefits solely on the basis of [the classification]." *Id.* at 741 n. 9, 104 S.Ct. at 1396 n. 9. Because Dr. Escobedo lacks standing to attack §§ 188.105 and 188.110.-1, we affirm the District Court's entry of summary judgment in favor of defendants on the claims asserted with respect to those sections.

## III.

Finally, plaintiffs argue that the District Court erred in refusing to certify the case as a class action. In light of our analysis of the merits of the case and our conclusion that the plaintiffs are not entitled to relief on any of their claims, the point is moot.

The judgment of the District Court is AFFIRMED.

Circuit Judge McMILLIAN dissents and would hold that the statute is unconstitutional because it substantially restricts access to abortion and interferes with the relationship between a woman and the physician of her choice.